OF

# THE SUPREME COURT

OF THE

# STATE OF ILLINOIS,

## JUNE TERM, 1852, AT OTTAWA.

CHARLES MASON, Executor, &c., of Jesse Smith, deceased, Plaintiff in Error, *v.* WILLIAM FENN, Defendant in Error.

13  525
169  190

13    525
107a ²290
e107a²291

### ERROR TO MARSHALL.

Where A leased to B a flouring-mill for a term of years, with the privilege to the tenant of making necessary repairs during the continuance of the term for the convenient use of the mill, the expense of which repairs were to be deducted from the rent, and necessary fixtures put into the mill by the tenant were to be paid for by the landlord at the expiration of the term, or the tenant might remove them, and the tenant was obliged, during the term, to put in a new boiler, back-stand and mud-valve, in order to use the mill:—

*Held,* 1st. That these improvements made in the mill were fixtures, but that they were subject to removal by the tenant while he remained in the possession of the mill under the terms of the lease. 2d. That the landlord having enjoined their removal while the tenant was in possession, could not object to the tenant removing them within a reasonable time after the dissolution of the injunction, though the tenant was not then in the possession of the mill. 3d. That the tenant having mortgaged said fixtures to secure the payment of his debt, and his creditor having brought an action of replevin to recover said fixtures against the landlord; it was agreed by the parties, that the property should remain in the possession of the defendant; but if it was decided that the plaintiff was entitled to the property, it should be delivered to him, or he should be paid its value.

*Held,* under said agreement, that plaintiff was entitled to recover the value of the property, together with damages for its detention.

THIS was an action of replevin, commenced by Fenn against Mason, in the Marshall Circuit Court, for one boiler for a steam-

engine, one back-stand and one mud-valve, belonging to said boiler — said boiler, &c., the same that were sold and conveyed by John W. Baxley to said Fenn, by chattel mortgage, and then in possession of Baxley, at Smith's Mill, in Lacon, at the time of bringing suit, in possession of said defendant in engine-house attached to said mill.

When the officer was about to execute the writ of replevin, the parties agreed that the sheriff should return the writ as having seized the property, and that the property should remain as it then was, in possession of the defendant, until the right of the plaintiff should be decided; and should the claim of the plaintiff to the property be sustained, the property was then to be delivered up to him, or its value was to be paid to him : the right to be determined as if the writ had been executed and possession taken. The case was submitted to the court, T. L. Dickey, J., presiding, at October term, 1851, upon an agreed statement of facts, which is embodied in the opinion of the court. The right to the property replevied was found to be in the plaintiff below. Damages for the detention of the property were assessed at $41.42.

O. Peters, for plaintiff in errror.

N. H. Purple, for defendant in error.

Treat, C. J. On the 23d of June, 1851, Fenn brought an action of replevin against Mason, executor of Smith. On the same day, the parties entered into an agreement as follows : " It is hereby agreed by the parties to the foregoing suit, that the property claimed by the plaintiff in said suit, to wit, the boiler, back-stand, and mud-valve, may remain in its present position, in the engine-house, attached to said mill, in the possession of the defendant, and subject to his control, until the right of the plaintiff is decided, without prejudice to the rights of the plaintiff; and should the claim of the plaintiff be sustained, the said property shall be delivered up to the plaintiff, or its value paid to him ; the rights of the plaintiff to be the same as if the writ of replevin had been executed by taking the property into the pos-

session of the sheriff." The cause was submitted to the court, at the October term, 1851, on an agreed statement of facts substantially as follows: On the 27th of February, 1847, Smith leased to Baxley and Quick a steam flouring-mill in Lacon, for the term of two years from the 15th of March following, and Baxley and Quick agreed to pay as rent the sum of $600 for the first year, and $700 for the second year; and the lease concluded as follows: " The said parties of the second part also agree to have said engine and mill run by good, sober, and competent men, and also put up a new set of wheat elevators, and also put a floor upon the basement; to be allowed the sum of $5.62 for putting up the wheat elevators, and to be deducted from the first payment of rent; the floor to be done as cheap as possible, and deducted from any payment of rent that may become due after the same is done; and other fixtures the said parties of the second part may put in said mill, beneficial to the same, at the expiration of said term said Smith agrees to pay for at a price to be agreed upon between said parties, or said parties to have the privilege of removing the same at the expiration of two years; said mill to be delivered up at the expiration of said term to said Smith, in as good repair as received, natural wear and fire only excepted." Baxley entered under the lease, and continued in possession until some time in June, 1849. During the spring of 1848, it became unavoidably necessary, in order to use the mill, to procure a new boiler for the steam-engine, the old one having given out; and Baxley, after informing the agent of Smith, procured the boiler, back-stand, and mud-valve now in question, and had them set in the furnace in the engine-house attached to the mill, where they have since remained and been used in running the mill. On the 27th of January, 1849, Baxley made a note to the plaintiff for $500, payable on the 1st of November thereafter; and at the same time he executed a mortgage to the plaintiff on the boiler, back-stand, and mud-valve, to secure the payment of the note. The mortgage was duly acknowledged and recorded, and contained a provision that Baxley might retain the possession of the property. On the 7th of April, 1849, Smith obtained an injunction, restraining the plaintiff and Baxley from removing the property from the

mill; and, at the October term, 1849, the injunction was dissolved, and the suit afterwards abated by the death of Smith. In November, 1849, immediately after the dissolution of the injunction, the plaintiff demanded the property of Baxley and Smith; Baxley desired to deliver it, but Smith refused to let it be removed. At the expiration of the lease, in March, 1849, one year's rent was unpaid; no settlement was ever made by the parties to the lease; and Smith never offered to pay Baxley for the property. The property was worth $350. The parties agreed that, if the plaintiff was entitled to the property, judgment should be entered in his favor for the value thereof. The court decided that the property belonged to the plaintiff, and that he was entitled to damages for the detention thereof, at the rate of six per cent. interest on the value, from the time the property was demanded of Smith; and judgment was accordingly entered in favor of the plaintiff, for $391.42.

We agree in opinion with the circuit judge, that the articles in question were fixtures within the agreement of the parties, for which compensation was to be made by the landlord, or the tenant might remove them at the expiration of the term. They were clearly of a beneficial character, for without them the mill could not be used. The old boiler became worthless, and it was absolutely necessary to the enjoyment of the demised premises that a new one should be procured. We are not inclined to hold, that the landlord had the right to retain the articles, because the tenant covenanted to restore the premises in as good a state of repair as he received them, with the exception of natural wear and casualty by fire. The parties could hardly have contemplated such extensive expenditures in the way of reparations. It was their intention, that the tenant should incur all necessary expense in keeping the buildings and machinery in repair; not that he should be compelled, at his own cost, to erect buildings, and provide new engines and boilers in the place of those that could not be repaired. For any additions to the property, in the way of repairs, the tenant could not demand compensation, nor could he detach the materials used and take them away. But the old boiler, without any fault on his part, became incapable of being repaired, and without a new one the

mill would not operate. It was not his duty, under such circumstances, to furnish a new boiler, at his own expense, for the benefit of the landlord. The articles in question were entirely new, and were put in the mill for the temporary convenience of the tenant; and they could be removed without detriment to the mill, and without injury to the landlord. The agreement secured the tenant compensation for these improvements, or the right to take them away at the end of the term. But, independent of this provision in the lease, he had the right at common law to make the improvements, and remove them during the term. As between landlord and tenant, improvements put on the demised premises by the latter, for purposes of trade or manufacture, and which can be detached without material injury to the estate, may be removed by him before he quits the possession. 2 Kent's Com. 343; Archbold's Landlord and Tenant, 365.

But the articles were not removed during the continuance of the lease, and it is, therefore, insisted that the tenant has lost his right to reclaim them. We think otherwise. He remained in possession of the premises after the expiration of the term, and, as we must presume, with the assent of the landlord. His right of removal continued so long as he was rightfully in possession. But he was prevented from exercising this right until long after he abandoned the possession, by an injunction sued out by the landlord. It would be wrong to permit the landlord to raise this objection, after he had interfered and prevented the tenant from availing himself of his privilege of removal. The tenant and his assignee, although out of possession, had a reasonable time after the injunction was dissolved within which to remove the property; and they have not forfeited their rights by any neglect to assert them. Immediately on the dissolution of the injunction, they endeavored to obtain the property, but were prevented from doing it by the defendant.

It is contended that the plaintiff was precluded, by the terms of the agreement, from claiming damages for the detention of the property. This position is not tenable. By the agreement, instead of recovering the specific property, he was to have a judgment for its value. The agreement did not embrace the matter of damages. If the plaintiff had insisted upon receiving the

property, he would have been entitled to recover such an amount of damages as would compensate him for the loss of the use of the property while it was withheld by the defendant. Agreeing to receive the value, instead of the property itself, he was equally entitled to damages for the detention. The court considered his damages equivalent to six per cent. interest on, the property, for the time it was detained by the defendant. This compensation was not given in the way of interest, but because the use of the property was worth six per cent. on its value. It was but a mode of ascertaining the real amount of damages sustained.

The judgment is affirmed.                     *Judgment affirmed.*