MATTIE J. STOKOE AND JOHN C. CLARK v. WILLIAM UPTON.

*Fixtures do not revest after severance.*

A gang edger in a saw-mill was held to be a trade fixture which a tenant who put it in might remove during the term of his lease, but not afterwards against the landlord's consent; and if he left it in the mill and the landlord detached it, the tenant did not for that reason recover title to it as a personal chattel.

Error to Benzie. Submitted April 9. Decided April 22.

REPLEVIN. Defendants bring error.

*Morris & Nelson* for plaintiffs in error. Trade fixtures put in by a tenant belong to the landlord at the expira-

tion of the lease unless removed before, *Heap v. Barton,* 12 C. B., 274; Tyler on Fixtures, 417; Ferard's Law of Fixtures [2d Am. ed.], 75, 77, and the tenant cannot remove them afterwards, *King v. Wilcomb,* 7 Barb., 263; if he unqualifiedly surrenders the premises to his landlord without reserving the fixtures, he is understood to have dedicated them to the landlord, Tyler on Fixtures, 453; *Reynolds v. Shuler,* 5 Cow., 323; *Beardsley v. Sherman,* 1 Daly, 325; *Loughran v. Ross,* 45 N. Y., 792; *Gaffield v. Hapgood,* 17 Pick., 192; *Bliss v. Whitney,* 9 Allen, 114; *Stockwell v. Marks,* 17 Me., 455; *State v. Elliot,* 11 N. H., 540; *Dingley v. Buffum,* 57 Me., 381; *Beers v. St. John,* 16 Conn., 322; *Shepard v. Spaulding,* 4 Met., 416; *Thropp's Appeal,* 70 Penn. St., 395; *Cromie v. Hoover,* 40 Ind., 49; *Allen v. Kennedy,* 40 Ind., 142; *Merritt v. Judd,* 14 Cal., 59; *Pugh v. Arton,* L. R. 8 Eq., 626; *Weeton v. Woodcock,* 7 M. & W., 14; *Lee v. Risdon,* 7 Taunt., 191; and detachment of the fixtures by the landlord after he has acquired title to them will not revest them in the tenant, *Lyde v. Russell,* 1 B. & Ad., 394; *Minshall v. Lloyd,* 2 M. & W., 450; Taylor's L. & T., § 553; Brown on Fixtures, §§ 227, 228; 2 Smith's Lead. Cas. [6th Am. ed.], 263.

*William H. Francis* for defendant in error.

GRAVES, J. One William Dunham and the plaintiff in error, John C. Clark, being owners of a steam saw mill at Frankfort, leased the same in writing to one J. Reed Emery for six months from April 24, 1877. Emery entered under the lease and held not only to the end of the term on the 24th of October, but until some time in the ensuing November. At some time during the term Dunham conveyed to the plaintiff in error, Stokoe. On the 19th of October Emery purchased a gang edger, and within a day or two, and before the close of his term, set it up in the mill and bolted and attached it firmly thereto.

He used it in connection with the mill from that time forward until some time in November, when he surrendered the mill, together with the gang edger, to the plaintiffs in error, and never afterwards did anything in or about the premises.

The machine remained as Emery affixed it and the plaintiffs in error made use of it as owners in connection with the mill.

May 6th, 1878, and about six months after his surrender to plaintiffs in error, Emery gave a bill of sale of the edger to defendant in error. And some time in the fore part of that month, the precise time not appearing, the plaintiffs in error, in order to accommodate the establishment to the manufacture of railroad ties, detached the machine and set it one side in the mill.

On the 16th of the same month the defendant in error seized it on the writ of replevin in this suit and based his right on the bill of sale.

At the trial the plaintiffs in error claimed, *first*, that the machine having been firmly annexed by their tenant and not having been detached during his term or occupancy, and he having surrendered the premises without having made any removal or any sort of exception or reservation, it became irremovable by him or any one in his shoes, and vested in them; and *second*, that they in fact acquired his interest by express purchase at the time the machine was being annexed. There was evidence in favor of their claims.

The jury found for defendant in error and the other parties except to the charge and to certain refusals.

In the course of his testimony the husband of Mrs. Stokoe, who appears to have acted as her agent, stated that he "paid to Butler $150 for rent of mill site." And this expression, which appears in the record isolated and unexplained, has been made use of to justify an argument that plaintiffs in error were not seized of the freehold, but were merely tenants for years; that their term

was yet running; that the annexation of the gang edger and Emery's surrender without removing it did not appropriate it to the term; that by law it could only become a part of the freehold and would remain removable until the right of entry of the *freehold reversioner* should accrue, and hence that the right of removal was subsisting when the bill of sale was made and when the suit was commenced. There is no occasion to spend time in explaining the inaccuracy of this theory, because the facts supposed by it are wanting. There is no evidence that at the time of the annexation or since, the plaintiffs in error were in as tenants for years. The evidence altogether tends to show they held the freehold. The charge given to the jury was defective and misleading. The fourth proposition applies the doctrine of *Adams v. Lee*, 31 Mich., 440, that where interests in land and chattels are inconsistent, the chattels must be regarded as preserving their character of chattels. There were no facts to call for any such rule.

. The record shows no diversity of interest nor any fact indicating that a conveyance of any share of the realty would not convey a like share of the machine.

The jury must have supposed that a state of things existed in regard to the ownership of the mill upon which a question could be made as to the possibility of a permanent annexation of the machine.

There was no attempt to explain the law governing such cases as the evidence tended to *disclose*. On the contrary, the third request on the part of plaintiffs in error, which was very applicable to the facts, was refused, as was also the first branch of the first request. Both of these should have been given. The machine was a trade fixture, and the general rule is that such chattels become annexed to the real estate: but that the tenant may remove them during his term, but not afterwards, against the consent of the landlord, and when they have fallen into the landlord's estate they do not revest as

personal chattels in the tenant in consequence of being severed by the former from their physical connection with the more permanent part of the property.

What has been said is sufficient to dispose of all the material questions.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.