Baker v. McClurg.

# Digory W. Baker et al. v. Aaron H. McClurg and National Biscuit Co.

| 96 | 165 |
|---|---|
| f96 | ¹229 |

| 96 | 165 |
|---|---|
| a198s | 28 |

| 96 | 165 |
|---|---|
| 104 | ³119 |

| 96 | 165 |
|---|---|
| h107 | ⁴293 |

1. TRADE FIXTURES—*Tenant's Right of Removal.*—As between a landlord and his tenant, removable trade fixtures include all erections made for the purposes of trade during the tenancy, which the tenant may have attached to the freehold while in possession, such as ovens, engines, boilers, and other fixtures used in the bakery business, when they can be removed without material injury to the realty.

2. SAME—*What Determines Their Character.*—To determine the irremovable character of a fixture, three tests are applied by modern authorities, viz.: First, actual annexation to the realty, or to something appurtenant to it; second, application to the use or purpose to which the part of the realty to which it is connected, is appropriated; and third, the intention of the parties making the annexation to make a permanent accession to the freehold.

3. SAME—*Where the Intention Controls.*—However permanently a fixture may be attached to the realty, if removable without material injury to it, the intention, to be inferred from the circumstances and the relation of the parties to each other and to the realty, or as shown by the evidence, is of controlling and decisive importance.

4. SAME—*Where One of Two Tenants is Released and a New Lease for the Balance of the Term.*—Where, during the term for which premises are demised to two tenants, one of them is released from liability for the balance of the term and a new lease is executed to the other without recognizing the right to remove fixtures, and he still remains in possession of the demised premises and the fixtures erected under the original lease, such transaction does not amount to a new leasing of the demised premises so as to affect the trade fixtures or the right to remove them.

**Bill for an Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1901. Affirmed. Opinion filed July 23, 1901.

**Statement.**—Appellants are owners of premises on Green street, Chicago, upon which, pursuant to an agreement in writing made in October, 1890, they erected a two-story and basement brick building, and by a written instrument dated January 15, 1891, leased the same to appellee McClurg and one George C. Aldrich, at that time composing the firm of McClurg & Aldrich. The building was erected

and was rented to be used for a bakery. Upon taking possession under their lease said McClurg & Aldrich proceeded to erect three ovens in the building, and also placed therein an engine, boiler, shafting, pulleys, wheels, etc. The principal oven, called a "reel" oven, extended from foundations laid in the earth below the basement floor through the first and second stories nearly to the roof of the building. Square openings had been left in the several floors, including the cement floor of the basement, when the building was erected, pursuant to the plans and specifications agreed upon between the parties, in order to enable said oven to be so built. This oven was built by the tenants upon foundations of its own, contiguous, but not attached to the north wall of the building. These foundations were laid (necessarily, because of the projection of certain of the footings of the building's foundations within the space to be used for the purpose,) partly upon said footings, the rest of the oven's foundations being laid upon or within the earth. Upon said foundations an arch was erected, on which the oven stands. The other two ovens erected by the tenants, known respectively as the Fish oven and the Peterson oven, rest likewise upon separate brick foundations, in part resting also upon the footings of the building wall, but do not extend quite to the basement ceiling. The boiler is inclosed in a brick masonry jacket separate from the brick wall of the boiler room in which it stands, said room being outside of and connected with the main building.

The lease to McClurg & Aldrich provided for a term of ten years, from January 15, 1891, until January 14, 1901. A new lease was, however, made for the balance of the same term by mutual agreement, December 2, 1891, owing to the withdrawal of Aldrich from said firm and his desire to be released from liability. It was executed by and between appellants and appellee McClurg alone. Except that the lessee is McClurg alone, the second lease is in substance and effect practically identical with the original. It contains, however, one additional provision, viz., a consent of

Baker v. McClurg.

the lessors to its assignment to the "McClurg Cracker Company." The business of McClurg and the McClurg Cracker Company together with the leasehold interest has since been transferred to the National Biscuit Company, but no formal assignment of the lease was made by McClurg.

Just before the expiration of the end of the term, the appellees were commencing to remove the ovens and fixtures when appellants filed a bill to restrain such removal, and obtained an interlocutory injunction. Upon hearing, that injunction was dissolved and the bill dismissed. From this decree, the present appeal is taken.

EDWARD W. CULLEN, attorney for appellants.

Courts of equity will restrain a tenant from doing acts contrary to his covenants. Taylor on Landlord and Tenant, Sec. 691; 10 American & English Ency. of Law, 809; Gauggel v. Ainley, 83 Ill. App. 582.

Where a lease is really intended by the parties as a substitute for a former lease, its execution and acceptance by the tenant must be held as amounting in law to a surrender of the former lease, and of all the rights to which the defendant was entitled under it. Hoag v. Carpenter, 18 Ill. App. 555; Jungerman v. Bovee, 19 Cal. 355; Livingston v. Potts, 16 Johns. 28; Van Rensselaer's Heirs v. Penniman, 6 Wend. 569; Ryan v. Kirchberg, 17 Ill. App. 132; Wood on Landlord and Tenant, Sec. 492; Taylor on Landlord and Tenant (7th Ed.), Sec. 512.

The removal of trade fixtures must be done without injury to the freehold. 8 American & English Ency. of Law, 48; Chase et al. v. N. Y. Insulated Wire Co., 57 Ill. App. 205; Hanrahan v. O'Reilly, 102 Mass. 201; Ambs v. Hill, 13 Mo. App. 582; Ewell on Fixtures, page 68.

GREEN, HONORE & PETERS and PECK, MILLER & STARR, attorneys for appellees.

In Illinois, the rule is settled that the chief test in determining whether such articles of personalty and the property of the tenant in removal, is that of intention. Kelly

v. Austin, 46 Ill. 159; Sword v. Low, 122 Ill. 487; Hewitt v. General Electric Co., 164 Ill. 420.

It is well settled in this State that the rule is more liberal in favor of the tenant, as between him and his landlord or lessor, than as between other parties, such as vendor and vendee, executor and heir. Kelly v. Austin, 46 Ill. 159; Arnold v. Crowder, 81 Ill. 58; Grymes v. Bowren, 6 Bingh. 439, 19 E. C. L. 201; Wiggins Ferry Co. v. O. & M. Ry., 142 U. S. 396.

As between landlord and tenant, removable trade fixtures include all erections made for the purposes of trade, during the tenancy, e. g., soap vats; fire engines to work a colliery; pans used in manufacturing salt; brew houses; furnaces and green houses; hot houses erected by nurseries and gardeners. Moore v. Smith, 24 Ill. 512.

On the whole, the tendency of modern authority, at least in the United States, is believed to be adverse to the rule laid down in Whitehead v. Bennett, that trade fixtures (or at least trade fixtures in the nature of buildings) to be removable must either be capable of being bodily removed, or taken in pieces and put up again, so as to be identically what they were before such removal. Ewell on Fixtures, page 96; Dostal v. McCaddon, 35 Ia. 318; Davis v. Moss, 38 Pa. St. 346; Antoni v. Balknap, 102 Mass. 193.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The question to be determined is whether the appellees are entitled to remove the ovens, engine and other fixtures erected by them upon the leased premises and claimed as trade fixtures.

It is contended in behalf of appellants, first, that the building upon the premises leased to McClurg & Aldrich January 15, 1891, was erected and designed as a bakery and that the ovens were erected by the tenants in pursuance of the same purpose and design, and became, therefore, a part thereof; second, that the removal of the ovens would result in material injury to the premises; third, that such removal would destroy their identity as ovens and their character as fixtures; and it is urged the law is that fix-

tures are not removable where they are placed in a building to carry out the design and purpose for which the building to which they are attached was erected or to permanently increase its value for occupation, nor where their removal would injure the freehold or destroy their identity as fixtures.

In the second place it is contended that when the original lease to McClurg & Aldrich was canceled, appellee McClurg took a new lease of the same premises without reserving therein any right to remove the fixtures in controversy and that he thereby lost the right to remove them even if such right had before existed.

The facts in the case are mainly settled by stipulation. There are, however, according to appellants' counsel, two controverted questions of fact, viz., whether the ovens were erected to carry out the purposes for which the building itself was designed, and what, if any, injury would result to the premises from their removal. But the alleged controversy is rather what conclusions are to be drawn from conceded facts, than as to the facts themselves. It is stipulated the building was erected in accordance with plans prepared and submitted to the lessees, McClurg & Aldrich, and by them approved as suitable for the uses to which they were intending to put it. They intended to and did use it as a bakery, and with that intention and for that purpose erected the ovens in question. So far, therefore, as the building was planned for the purpose for which the tenants intended to use it, both building and ovens were constructed with the same immediate end in view. But it does not necessarily follow from that fact that the ovens and trade fixtures became thereby a permanent part of the building, or so entered into and influenced its character and construction that without them the ultimate design and purpose of the building would be frustrated. It is doubtless true that they were put in for the same purpose for which the building itself was intended during the term of the lease. But that fact is not enough to justify the conclusion that the building was designed and intended for a bakery and noth-

ing else after the expiration of the term, and that it is
unsuited to other uses.   The evidence does not so indicate.
The only material difference of construction distinguishing
it from other buildings designed for any business requiring
the use of machinery, appears to be that openings were left
in the floors for the erection by the tenants of the " reel "
oven.   With these closed we find in the evidence no reason
to suppose that the building was not designed and is not
adapted for any of the ordinary uses of buildings of its
general character as well as for a bakery. ˙ If so, the bakery
fixtures are not irremovable because of the purpose for
which the building was erected. Neither did they enter into
its ultimate design and purpose to any greater extent than
ordinary trade fixtures put in by a tenant, and suited to his
special business; nor is it apparent that the building itself
will be injured by their removal.   It is true the removal of
the reel oven would leave the original openings in the two
floors as well as in the cement floor of the basement.   But
these were left when the building was erected, and if they
should be filled in by the tenants to correspond with the
rest of the building, as may be the latter's duty in equitable
compliance with their covenants, it is difficult to see
wherein the freehold would be injured.   It is also true,
doubtless, that the brick structure˙ of the ovens, when
removed, would have to be taken down brick by brick; but
this need not be injurious to the building or premises if the
work should be properly done.   We conclude, therefore, that
the facts do not justify the conclusion that the ovens
became necessarily a part of the building by reason of the
purposes for which both building and ovens were con-
structed, nor that the removal of the fixtures would neces-
sarily injure the freehold.

   But it is said that fixtures are not removable, if by re-
moving them their identity and character as fixtures are
destroyed.   That taking down the ovens brick by brick
and removing the iron of the structure piece by piece
would change the form of the original structures for the
time being, is made clear by the evidence, and is obvious.

It could never again be precisely the same structure of brick and mortar as before, but the iron work would doubtless retain its identity even though taken down in pieces and subsequently re-erected; and there is evidence tending to show that the ovens can be profitably removed and re-erected by the tenant.

The ovens in question were, when erected by the lessees, as the evidence tends to show, intended for trade fixtures. This intention is clearly indicated by the conduct of the tenants. The ovens were not attached to nor made a part of the structure of the building. They were built within it but not of it. They were not joined to its walls nor to its foundations. These facts of construction certainly tend to sustain the contention of appellees that it was the intention at the time they were put up to have them removable. There is other evidence of such intention and understanding afforded by the bills of sale transferring the machinery, fixtures, ovens, etc., from Aldrich to McClurg, from McClurg to the Cracker Company, and from the latter to the Biscuit Company. That this was also the view of the landlords is, we think, apparent from the conduct of the latter. One of the appellants testifies to having visited the premises shortly before the expiration of the term of the leases, looking the fixtures all over, including the engine, boiler, shaftings and steam heating plant, and asking appellee McClurg "to put a price on it, and also to include the ovens." He states that McClurg told him he would not include the ovens, and that afterward he (appellant) "again asked him to throw in the ovens. We would buy the whole thing." Whatever may be the effect of this testimony in other respects, it does tend to show an understanding on the part of both parties at that time that the fixtures were the property of appellees and removable. There is no evidence of any other intention or understanding during the whole of the ten year term.

There is some conflict of authorities as to whether fixtures are removable, when by removal they are liable to suffer substantial injury. In Collamore v. Gillis, 149 Mass.

578–581, it is said that "in determining whether an addition by the tenant to a leased building is removable or not by him during his term, the chief thing to be considered is the mode of its annexation, and whether it can be removed without substantial injury to the building or to itself. The intention with which it was put there though often an element to be considered is of secondary importance. We are not inclined to extend the right of removal so far as to include a thing which can not be severed from the realty without being destroyed or reduced to a mere mass of crude materials." But in Hopewell Mills v. Taunton Sav. Bank, 150 Mass. 519, it is said: "The tendency of the modern cases is to make this a question of what the intention was with which the machine was put in place." The rule in Illinois is liberal in favor of the tenant. As between him and the landlord removable trade fixtures may include all erections made for the purposes of trade during tenancy, "which he may have attached to the freehold while in possession, such as soap vats, engines, a working colliery, pans used in manufacturing salt, brew houses, furnaces, green houses and hot houses erected by nurserymen and gardeners." Moore v. Smith, 24 Ill. 512–516. Ordinarily such things can not be removed without injury to the material composing them. No reason is perceived why in the nature of things an exception should be made in the case of ovens, engine, boiler and other fixtures such as those here in controversy. It has been held that a two-story house with brick chimney and foundations was so removable. Van Ness v. Pacard, 2 Peters (U. S.) 413. In Wiggins Ferry Co. v. O. & M. R. R. Co., 142 U. S. 396–416, it is said: "Indeed, it is difficult to conceive that any fixture, however solid, permanent and closely attached to the realty, placed there for the mere purposes of trade, may not be removed at the end of the term."

In the case of Moore v. Wood, 12 Abbott Pr. (N. Y.) 393, it was held that a brick chimney extending through the roof and with its foundations three feet in the earth, erected for trade or manufacturing purposes by the ten-

ant, might be removed. The court says: "It was not movable without taking it down, and was in every respect a ponderous structure. Nevertheless, under the circumstances of the present case it was not a fixture. The rigor of the ancient law of fixtures has yielded and must continue to yield to the contingencies of modern times. The law must take notice of trade and manufactures and their wants, and afford to them adequate and appropriate protection."

It is contended by appellees that the intention with which the fixtures were put in place, as shown by the evidence in the case before us, is the chief test as to whether they are removable by the tenant before the expiration of his lease. This is conceded by appellants to be the rule, if such fixtures may be removed without injury to the freehold or themselves. But, as we have said, the evidence fails to sustain appellants' claim that their removal would, in this case, necessarily injure the freehold; and authorities above referred to are to the effect that the fact that its removal requires the taking to pieces of a fixture, such as a brick chimney or a brick oven, is not conclusive against the tenant's right. Upon principle, it would seem that the mere fact that its removal may cause some injury to the fixture itself, though not injuring the freehold, ought not to destroy the right. The landlord is not affected by an injury done by the tenant to the latter's own property. It may still be valuable to the tenant, even though he be put to extra expense to repair or rebuild. And if, when the trade fixture was erected, the tenant, by his conduct, manifested the intention to retain ownership and remove it at the end of the lease, it appears that such intention should control, even if such removal necessitates a reconstruction of the fixture. Ewell on Fixtures, p. 96. Identity is not necessarily lost by demolition. It is said in Hopewell Mills v. Taunton Savings Bank, 150 Mass. 522, before referred to, "the intention to be sought is not the undisclosed purpose of the actor, but the intention implied and manifested by his act." In this State the intention so manifested is

regarded as the principal test to determine the right of removal. In Sword v. Low, 122 Ill. 487, 496, it is said: "To determine the irremovable character of a fixture, three tests are, by the modern authorities, applied, viz.: First, actual annexation to the realty, or something appurtenant thereto; second, application to the use or purpose to which that part of the realty with which it is connected is appropriated; and third, the intention of the parties making the annexation to make a permanent accession to the freehold." Here no such intention appears, but the contrary. It is further said in that case: "It is apparent, from the authorities, that however permanently attached, if removable without material injury, the intention, to be inferred from the circumstances, and the relation of the parties to each other and to the realty, or as shown by the evidence, will be of controlling and decisive importance." To the same effect are Fifield v. Farmers Nat. Bank, 148 Ill. 163–170; Hewitt v. Gen. Electric Co., 164 Ill. 420, 424; Kelly v. Austin, 46 Ill. 156, 159.

In the present case, the fixtures in controversy being so removable, and having been erected with that intention, were subject to be taken away by the tenant, unless, as is contended by appellants, the right to removal was lost by acceptance, after the erection of the fixtures, of a new lease, which contains no express reservation of the right to remove.

In Sanitary District of Chicago v. Cook, 169 Ill. 184, it is said: "But the great weight of authority seems to be that where, at the expiration of a lease during which trade fixtures had been erected on the premises by the tenant, a new lease is taken of the same premises containing no reservation of any right or claim of the tenant to the fixtures still remaining on the premises, and without recognizing the right to remove them, such fixtures erected under the former lease can not be removed by the tenant during or at the end of the new lease, notwithstanding his actual possession of the premises has been continuous." And it is further said: "The reason given is because the fixtures

Baker v. McClurg.

set up on the premises at the time of the lease are part of the thing demised, and the tenant, by accepting a lease of the kind without reserving his right to the fixtures, has acknowledged the right of his landlord to them, which he is afterward estopped from denying."

Applying the foregoing rule to the case at bar, the only question we deem it necessary to consider is whether, in fact or law, the alleged cancellation and surrender of the original lease to McClurg & Aldrich and the execution of a new instrument to McClurg alone constituted a new lease of the premises, including the fixtures in dispute. It will be noted that this transaction occurred, not at the expiration of the original lease, but during its term, which continued to run on as before. All that was in reality done, was just what was intended to be done, viz., to release Aldrich from liability as a lessee thereunder, in accordance with his wish to be relieved because of his retirement from the firm. It appears that upon one copy of the original instrument, the appellants wrote the words, " Canceled December 2, 1891—D. W. & H. Baker," and handed said copy to Aldrich, the retiring partner and lessee, but retained in their possession the other copy or duplicate, which was uncanceled and unsurrendered. It is true that a new lease was made out and executed by McClurg alone, but it was for the balance only of the same term, at the same rental, payable in monthly installments of the same amount, at the same place, to the same parties. It was but a reiteration of the former lease. It contained, in addition thereto, a permission for assignment by McClurg to a corporation, the McClurg Cracker Co., which he seems to have been intending to organize or had organized, to take in the business; but this certainly did not make it a new lease. It is evident that there was in this transaction no intention to create any new or different liability on the part of McClurg, the lessee. The purpose, as shown by what was done, was to release Aldrich, and what was done was in legal effect no more than if an indorsement had been made on the original instrument to the same effect. We are compelled

to the conclusion that the parties did not intend to and did not in fact make any new or additional demise, or create any new obligation for the tenant, and that the lessee, McClurg, did not intend to and did not in fact accept any new obligation; in other words, that the transaction did not amount to a new leasing of the demised premises, and had no effect whatever upon the ownership of the trade fixtures in controversy and the right to their removal.

The judgment of the Circuit Court must be affirmed.