## Louis F. Dreiske et al. v. People's Lumber Co.

1. INJUNCTIONS—*Dissolution of Injunction a Final Order, When.*— An order dismissing an injunction is a final order where the injunction is the only relief prayed for in the bill, and is equivalent to a dismissal of the bill.

2. LANDLORD AND TENANT—*Tenant Holding Over Against the Will of the Landlord Forfeits Right to Remove Fixtures.*—Where the tenant remains in possession of the demised premises after the expiration of the lease and against the consent of the landlord, he is a trespasser and has forfeited his right to remove trade fixtures.

3. TRADE FIXTURES—*May Be Removed During the Term.*—Trade fixtures become annexed to the real estate, but the tenant may remove them during his term, and if he fails to do so, he can not afterward claim them against the owner of the land.

**Bill for an Injunction.**—Error to the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge presiding. Heard in this court at the October term, 1902. Reversed and remanded with directions. Opinion filed March 19, 1903.

Statement.—May 1, 1894, William Dreiske, since deceased, as first party, made a lease to said lumber company, as second party, of certain real estate in Chicago, together with the dock on said premises, extending to April 30, 1899, for certain rentals therein reserved, payable monthly in advance on the first day of each month during the term of the lease. The lease contains many covenants and provisions not necessary to be here stated, among others the following:

"It is further covenanted and agreed by and between the parties hereto that at the termination of this lease said second party, or its assigns, shall have the right to and shall have removed from said premises all buildings, sheds, planking, foundations, fencing, machinery, boilers, machinery foundations, boiler foundations, and all other improvements or additions heretofore made or erected or placed upon said premises by said second party, or its assigns, or that shall hereafter be made or erected or placed thereon by said second party or its assigns during the term of this lease, it being expressly understood that the parties hereto do not intend, nor does either of them, that any, all or either of the foregoing buildings, sheds, planking, foun-

dation, fencing, machinery, boilers, machinery foundations, boiler foundations or other improvements or additions now upon or hereafter to be made, erected or placed upon said demised premises, should be or become a part of the realty herein demised."

Also the following:

"The party of the second part does hereby covenant and agree to surrender and deliver up said above premises and property peaceably, to the said party of the first part, his heirs, executors, administrators, agent, attorney or assigns, immediately upon the determination of said term as aforesaid, and if it shall remain in possession of the same one day after notice of such default, or after the termination of this lease, in any of the ways above named, it shall be deemed guilty of a forcible detainer of the premises under the statute, and shall be subject to all the conditions and provisions above named, and to eviction and removal, forcibly or otherwise, with or without process of law, as above stated."

Some months before the expiration of the term of this lease there were negotiations between plaintiffs in error and the lumber company for a further term, though no agreement was reached, but the company remained in possession of the premises until the 16th day of May, 1899, when it began to remove and partially removed certain buildings, fixed machinery and other improvements from said premises, whereupon the bill in this case was filed against the lumber company to prevent it from removing any of the buildings, sheds, planking, foundations, fencing, fixed machinery, boilers, machinery foundations or boiler foundations, or other improvements then on said premises. A temporary injunction to that effect was issued by the chancellor, but was subsequently dissolved on motion of solicitors of the lumber company, the order of dissolution reciting that the motion was heard upon the "bill, answer and affidavits filed herein." The transcript of the record appears to be true, perfect and complete according to the clerk's certificate, but no affidavits appear in the record—only that the bill and answer of the lumber company and an amendment to the bill are respectively sworn to. The

Dreiske v. People's Lumber Co.

bill does not appear to have been formally dismissed, and the cause was referred to a master to take proof and report his conclusions as to a suggestion of damages made by the lumber company.

Besides the matters above stated, it appears from the bill which was filed May 17, 1899, that the lumber company went into possession of said premises at the date of said lease, and remained therein according to its terms until its expiration, and that the lumber company never at any time entered into any agreement with William Dreiske or the complainants for the occupancy of said premises beyond April 30, 1899, and that the occupancy thereof by the lumber company since that date has been without right or authority and against the will of the complainants; that the company had, during its occupancy of the premises, erected thereon certain brick and frame buildings, sheds, fencing, machinery, boilers and other improvements; that the company began on May 16, 1899, to remove from said premises the improvements above referred to, and threatened and still threatens to continue so doing until they shall all be removed; that all said improvements (specifying them) are attached to and fixed to the ground described in said lease by means of foundations set in the earth, and by bolts, screws and other similar appliances; that if the lumber company is permitted to remove from said premises the improvements in question, irreparable damage will be caused to complainants; also that William Dreiske died seized in fee of said premises June 7, 1897, leaving a will which was duly proven and admitted to probate in the Probate Court of Cook County, Illinois, on June 11, 1897, in and by which the complainants are named as executors and trustees, and are vested with the title to the property in question. Complainants qualified as such executors.

The answer admits the making of the lease, but denies that the company occupied said premises after the termination of the lease against the will of complainants, and alleges, on the other hand, that the company remained in posses-

sion up to and including May 16, 1899, with the knowledge and consent of the complainants, during all of which time it is alleged by said answer, that negotiations commencing as early as March 27, 1899, up to May 16, 1899, were carried on between it and complainants with reference to a continued occupancy by it of the premises, and a re-leasing thereof, and further alleges certain matters in detail, which tend to show that the company remained in the premises with the consent of complainants; that the improvements in question are worth in all $32,000; that it was finally notified, May 16, 1899, by complainants, that all negotiations were off.

By an amendment to the bill filed June 12, 1899, three days before the injunction was dissolved, it appears that complainants notified the company on or about April 1, 1899, that its rights of possession of said premises would expire April 30, 1899; that on May 12, 1899, they begun a suit in forcible detainer before a justice of the peace against the company to recover the possession of said premises, which was set for hearing May 19, 1899, and that during the night of May 16, 1899, the company secured a large number of men and removed from said premises all the valuable machinery thereon, except one engine, three boilers and a hot water heater, and in so doing seriously injured the buildings on the premises, the nature of which is set out, and that the engine, boilers, etc., if allowed to remain where they were on the premises would be worth several thousand dollars, but if taken away would be worth very much less. Nothing further, material to the consideration of the case, appears in the record, except details to which reference has been made.

LACKNER, BUTZ & MILLER and GEORGE J. DRIESKE, attorneys for plaintiffs in error.

The rule, making improvements annexed to the realty a part of the realty, is relaxed in favor of tenants to the extent of permitting them, during the term and so much longer as they remain in possession with the landlord's consent, to remove the fixtures erected by them.

But when the tenancy expires on a day certain and the tenant holds over against the will of the landlord, he forfeits his right to remove the fixtures.   Thomas v. Crout, 68 Ky. 37; Sullivan v. Carberry, 67 Me. 532; Davis v. Buffum, 51 Me. 160; Watriss v. Nat'l Bank of Cambridge, 124 Mass. 575; Gaffield v. Hapgood, 17 Pick. 194; Griffin v. Ransdell, 71 Ind. 443; Davis v. Moss. 38 Pa. St. 346; Donnelly v. Thieben, 9 Ill. App. 498; Mason v. Fenn, 13 Ill. 525.

ELMER H. ADAMS, attorney for defendant in error.

MR. JUSTICE WINDES delivered the opinion of the court.

A preliminary question is suggested by counsel for plaintiffs in error, though it is not argued by counsel for defendant in error, viz., whether error will lie because the bill was not formally dismissed.   The only relief asked by the bill was for an injunction, and that being dissolved, was in effect a disposition of the whole case, and equivalent to a dismissal of the bill.   Even plaintiffs in error might have had the bill dismissed on their own motion after a dissolution of the injunction.   Titus v. Mabee, 25 Ill. 257; Prout v. Lomer, 79 Ill. 331; Williams v. C. E. Co., 188 Ill. 19, and cases cited.

The principal question in controversy arises upon the provision of the lease first above quoted in the statement.   We think it plain from this provision that the improvements in question referred to specifically in the statement as between the parties were to be considered as in the nature of personal property during the existence of the lease, and it was evidently inserted for the purpose of removing any question, as between the parties, as to whether any erections which might be made by the lumber company during its lease became a part of the realty or were merely trade fixtures removable at the pleasure of the company during the existence of the lease, subject, however, to certain provisions of the lease with regard to the payment of rent, which are in no way in question.   If it is true, as alleged in the sworn bill, that the lumber company remained in possession of the demised premises after the 30th day of April, 1899,

against the consent of plaintiffs in error and in direct violation of the provisions of the lease (and for the purposes of this decision that must be taken as true, since there has been no final hearing in the case, the injunction being dissolved on motion of the lumber company), then it follows that the, company was a trespasser, had no right to remove the improvements in question, and the injunction was improperly dissolved.   Donnelly v. Thieben, 9 Ill. App. 498; Mason v. Fenn, 13 Ill. 525; Peck v. Christman, 94 Ill. App. 435; First Nat. Bk. v. Adam, 138 Ill. 483–98; Sanitary Dist. v. Cook, 169 Ill. 184; Thomas v. Crout, 68 Ky. (5 Bush) 37; Watriss v. Nat. Bk., 124 Mass. 571; Talbot v. Cruger, 151 N. Y. 117–20; Overton v. Williston, 31 Pa. St. 155–8; Sullivan v. Carberry, 67 Me. 532; Stokoe v. Upton, 40 Mich. 581–4; Darrah v. Baird, 101 Pa. Sta. 265; Shellar v. Shivers, 171 Pa. Sta. 569.

It should be noted in connection with the matters above stated, that under the first provision of the lease quoted, it was the duty of the lessee, the lumber company, at the termination of the lease to have all said improvements at that time—the termination of the lease—off the demised premises.   The language is, " shall have the right to and shall have removed from said premises, all buildings," etc.   This applies not only to improvements made before the lease, but to all that might thereafter be made; and it should be noted that the part of this provision relied upon by the defendant in error refers to the same improvements, and the greatest effect that can be given to it is, in our opinion, that the improvements, of whatever nature, were to be considered, as between the parties, trade fixtures, and removable as such, and in compliance with the terms of the lease.   The provision that the buildings, etc., should not become a part of the realty, can have no greater effect than making them trade fixtures and removable as such, so far as concerns the rights of the parties to this case.   Darrah and Shellar cases, *supra.*

The second provision of the lease quoted in the statement makes it the duty of the lessee to deliver up said premises " immediately upon the termination of said term," and

if it should remain in possession thereof "after the termination of this lease" it should be deemed guilty of a forcible detainer of the premises under the statute, and subject to eviction and removal, forcibly or otherwise; in other words, the company, by remaining beyond the end of the term, became a trespasser and had no right to remove these improvements.

In the case of the Sanitary District, *supra*, in which the court had under consideration the right of the tenant to remove trade fixtures in the case of a new leasing without reserving the right to remove the fixtures placed on the demised premises under a previous lease, while quoting some language in Mason v. Fenn, *supra*, which would seem to support defendant in error's contention, held, citing numerous authorities, that in the case of a new leasing, which failed to recognize the right of the tenant to remove trade fixtures erected thereon under a previous lease, there being no change of possession, such fixtures could not be "removed by the tenant during or at the end of the new lease, notwithstanding the actual possession of the premises has been continuous." This seems decisive of the question in this case.

In the Donnelly case, *supra*, this court, the opinion being delivered by Mr. Justice Bailey, subsequently of the Supreme Court, speaking on this question, said :

"The tenant's right to remove is rather considered a privilege allowed to him, than an absolute right to the things themselves. If he does not exercise the privilege before his interest expires, he can not do it afterward, because the right to possess the land and the fixtures as a part of the realty vests immediately in the landlord; and, although the landlord has no right to complain, if the land be restored to him in the same plight it was before he made the lease, yet, if the land is suffered to return to him with additions and improvements, even by forfeiture or notice to quit, he has a right to consider them as a part of his property."

In the Mason case, *supra*, in which the court said that trade fixtures which could be "detached without material injury to the estate, may be removed by him (the

tenant) before he quits the possession," the court further says, after stating that the articles were not removed during the continuance of the lease, that " he (the tenant) remained in possession of the premises after the expiration of the term, and, as we must presume, with the assent of the landlord. His right of removal continued so long as he was rightfully in possession." The court further on in the opinion states that the tenant was prevented from exercising this right by an injunction sued out by the landlord. The case is far different from the one at bar, in which, according to the bill, which must be taken as true, the lumber company was given at least a month's notice by complainants that its right of possession would expire April 30, 1899, and the possession thereafter was against the consent of plaintiffs in error, and in direct violation of the terms of the lease.

In the Peck case, *supra*, this court held that where a tenant holds over, the landlord has the right to treat him as one wrongfully in possession, or as a tenant holding for a new term. This is sustained by numerous authorities. It follows, therefore, that if the lumber company was not a tenant for a new term, and that is not claimed, but on the contrary it is specifically alleged by the bill that it held against the consent of the complainants, it was therefore a trespasser after April 30, 1899.

In the Watriss case, *supra*, the Supreme Court of Massachusetts, while Mr. Justice Gray was a member of the court, speaking through Mr. Justice Endicott, and citing numerous cases, say :

" The general rule is well settled that trade fixtures become annexed to the real estate; but .the tenant may remove them during his term, and if he fails to do so, he can not afterward claim them against the owner of the land. This rule always applies when the term is of certain duration, as under a lease for a term of years, which contains no special provisions in regard to fixtures."

The court held the law, under somewhat similar facts to those in the Sanitary District case, *supra*, to be as held by our Supreme Court in that case.

Dreiske v. People's Lumber Co.

It must be held, therefore, that the lumber company was not rightfully in possession on the 16th of May, 1899, when it began the removal of the improvements.   Whether or not it was rightfully in possession was a question which we think should have been tried, not upon the affidavits or sworn pleadings in the case, but upon evidence on a final hearing, the bill being solely for an injunction.   The logical conclusion of the contention of the lumber company, viz., that under the terms of the lease, so long as the company remained in possession after the end of the term of the lease without any reletting, the title to the property remained in the company and might be removed by the company, would be to deprive plaintiffs in error of all right to use their property without at the same time being either liable to the lumber company for the value of these improvements, or being liable to interference and serious injury at any time the company might see fit to remove the improvements.   This seems unjust and an untenable position, if the bill is true.

The views expressed are in principle, as we think, sustained by the other authorities above cited, with others not mentioned.   Some of the early English cases and cases in other jurisdictions than Illinois, seem to sustain the claim of defendant in error, but we think the weight of authority and the better reason sustain our holding.

The case of Baker v. McClurg, 96 Ill. App. 165, 171, does not, as we construe it, conflict with the views expressed.   The real question there decided was whether the cancellation of an original lease to McClurg & Aldrich during the term and the execution of a new lease to McClurg, the latter not reserving the right to remove fixtures by the new lease, had any effect upon the ownership of trade fixtures and the right to their removal during McClurg's possession under the new lease.   It was held that the new lease did not affect these rights.   In fact the decision of the case is in part based upon that of the Sanitary District case, *supra*.

The case of Berger v. Hoerner, 36 Ill. App. 361, relied upon by defendant in error, in so far as it may be said to

conflict with our holding, must yield to the decisions of the Supreme Court.

The answer of the lumber company claims that plaintiffs in error have an adequate remedy at law, but this is not argued in this court and is therefore waived.

We are of opinion that the bill and amended bill of plaintiffs in error presents matters of equitable cognizance, and that the learned chancellor erred in dissolving the injunction, thus deciding the whole case on motion. The order in that regard is therefore reversed and the cause remanded, with directions to the Superior Court to take such further proceedings as may be consistent with the views herein expressed, and as equity and justice may require in case of a further hearing of the cause.

Mr. Presiding Justice BALL took no part in this decision.