**Eleanor Getzendaner, Appellant, v. Mrs. Charles Erbstein, Appellee.**

**Gen. No. 45,133.**

Heard in the first division of this court for the first district at the April term, 1950. ▮▮▮▮▮▮ Opinion filed October 9, 1950. Rehearing denied November 17, 1950. Released for publication November 17, 1950.

SCALISE, CHINO & SCHULTZ, of Chicago, for appellant.

CASIMIR GRIGLIK and HARRY J. MYERSON, both of Chicago, for appellee; HARRY J. MYERSON and MAURICE H. KAMM, both of Chicago, of counsel.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiff filed her complaint alleging that she entered into a lease with defendant for the use of defendant's property for the period November 1, 1945 to December 31, 1948, said lease providing, "It is further agreed that the parties of the second part are to erect a building to be attached to the north side of the present building (stables) but in doing so they are not to break any of the present walls, and at the expiration of this lease they shall have the privilege of removing said building and must leave the present building in good condition"; that plaintiff thereafter erected a large building at a cost of $7,300, having a reasonable present value of $7,200, and also a ring fence reasonably worth $500; that thereafter on May 22, 1947, defendant served on plaintiff a five-day notice for possession and on or about July 5, 1947, a writ of restitution for possession of the demised premises was served on plaintiff, said writ having been issued pursuant to a judgment for possession, and on the same day defendant was forcibly ejected from the premises; that at the time and place she attempted to remove the building built by her but was forcibly prevented from doing so by the defendant. She asked for damages in the sum of $10,000. The complaint was stricken on a motion of defendant on the grounds that no cause of action was set up in the complaint, and that the complaint shows on its face that on July 5, 1947, plaintiff was a trespasser and as such had no right on the premises for the purpose of removing fixtures or otherwise.

 As authority for the proposition that fixtures must be removed, if at all, during the term of the lease defendant cites several Illinois cases. These cases have to do with situations where the lease has ended by its terms and not by reason of prior default and judgment for possession. Where a lease ends by its terms, the lessee is aware that all his rights in the premises would be extinguished on a day certain and is

not prejudiced by the requirement that he remove any fixtures to which he is entitled during the defined period. However, where the tenancy is ended prior to the expiration of the lease as a result of a forcible entry and detainer action instituted during the period of the lease, the same certainty of termination does not appear until after judgment. In such case it has been held that the tenant is entitled to a reasonable period after the termination of the lease for the removal of fixtures. In *Merrell v. Garver,* 54 Ind. App. 514, the court said (pp. 525, 526):

"The rule, in this State and in many others, is that a tenant who owns buildings placed upon the land of another, with the right of removal reserved, may remove them within the term of his lease or within a reasonable time after the termination of the lease, or any extension thereof, unless by the express terms of the lease he forfeits them if not removed by a specified date. . . . Jones, Landlord and Tenant, § 719, states the rule as follows: 'While the common law right to remove trade fixtures must be exercised during the term, a similar privilege conferred by agreement is not so narrowly restricted as to the time when the removal must be effected. . . . If the removal should not be effected within a reasonable time after the term expired, the right would cease and the property become a part of the realty.' "

In *Davidson v. Crump Mfg. Co.,* 99 Mich. 501, the court said at page 503:

"The express terms of the lease allow the removal *'at the end of this term.'* . . . It is evident that this clause was not inserted to limit defendant's rights of removal, but to protect them. It says nothing about its losing them if the property should not be seasonably removed, but, on the contrary, it expressly says that defendant shall have a *right* to remove *at* the end of the term, when, under the law as generally understood,

unless otherwise agreed, it would be its duty to remove before yielding up possession. Clearly, if any force is to be given to this provision, it is that, after the expiration of the term, defendant should be permitted ingress and egress for a reasonable time to remove its property.''

To the same effect are the holdings in *Smith v. Park,* 31 Minn. 70, 72, and *Caperton v. Stege,* 91 Ky. 351, 354. The doctrine is also cited in the case of *Fellows v. Johnson,* 183 Ill. App. 42, although in that case it was held that there was nothing in the lease which expressly or by implication gave appellant any right to enter and remove the structures after the termination of his lease. In these cases the further distinction is emphasized that while under the common law the right of a tenant to remove fixtures must be exercised before he quits possession and if not so done is deemed lost or abandoned, when a privilege of removing fixtures at the termination of the lease is provided for in the lease itself, the agreement is not so narrowly restricted as to the time when the removal must be effected. It is further noted that in the instant case no time for the removal of the fixtures was provided other than the general language that the lessees should have the privilege of removing the fixtures ''at the expiration of this lease.'' It must be noted in this connection that the lease did not limit by express language the privilege of removing the fixtures at the termination of the lease, in the event such termination occurs before the expiration date in the lease. In *Smith v. Park* such a clause was interpreted as follows:

''The terms of the lease giving the right of removal *at the expiration of the term,* the tenant was not required to remove the house *during* his term, but might occupy it as a dwelling-house during the full term, and then within a reasonable time remove it.''

What constitutes a reasonable time after the termination of tenancy for removal of fixtures is a question of fact for the jury.

We do not observe the complaint herein was defective in any substantial particular. Moreover, the motion for its dismissal did not point out specifically the defects complained of as provided in par. (1), sec. 45 [par. 169] of the Civil Practice Act [Jones Ill. Stats. Ann. 104.045]. In view of the injunction of par. (3), sec. 33 [par. 157] of the Civil Practice Act [Jones Ill. Stats. Ann. 104.033], that pleadings shall be liberally construed with a view to doing substantial justice between the parties, we are of the opinion that the complaint stated a cause of action and its dismissal was error. Therefore, the judgment order is reversed and the cause is remanded for proceedings in conformity with the views herein expressed.

*Reversed and remanded.*

NIEMEYER, P. J., dissents.

FEINBERG, J., concurs.

NIEMEYER, P. J., dissenting. Plaintiff alleges that on May 22, 1947, defendant served a five-day notice on her, rent for March, April and May totaling $450 being in arrears; on July 5, 1947, a writ of restitution "pursuant to a judgment for possession entered in favor of defendant by the Justice of the Peace" was served and plaintiff forcibly ejected from the premises; "that at said time and place the plaintiff was entitled to and did attempt before she had surrendered possession of the premises, to remove the building, . . . but was forcibly prevented from doing so. . . ." By the terms of the lease and by the statute (Ill. Rev. Stat. 1949, ch. 80, par. 8 [Jones Ill. Stats. Ann. 72.08]) defendant was authorized to end the lease upon default in payment of rent. Commencement of the action for possession terminated the lease. *Jefferys v. Hart*, 197 Ill. App. 514. The complaint does not show when the

forcible detainer action was commenced or the judgment for possession entered. Since it must be taken most strongly against plaintiff and most favorably toward defendant (*Dunham v. Dunham,* 162 Ill. 589, 612), we must assume that the action for possession was commenced May 28, 1947, the day following the expiration of five days after service of the notice. From that day plaintiff was in possession as a trespasser and not in the character of a tenant. *Dreiske v. People's Lumber Co.,* 107 Ill. App. 285; *Balaban & Katz Corp. v. Channel Amusement Co.,* 336 Ill. App. 113.

Defendant moved to strike the complaint, assigning as a second reason for her motion that the complaint shows the service of the five-day notice, issuance of the writ of restitution, and that the property had not been removed prior to the termination of the lease. This assignment is tantamount to a denial of plaintiff's right to remove the building after the termination of the lease, and raises directly and specifically the controlling question in the case. Defendant's motion, therefore, meets all the requirements of section 45 of the Civil Practice Act. In the absence of agreement between the parties, the right of a tenant to remove fixtures is fixed by statute (Ill. Rev. Stat. 1949, ch. 80, sec. 35 [par. 34]; [Jones Ill. Stats. Ann. 72.35]) as amended in 1905, reading as follows:

"Subject to the right of the landlord to distrain for rent a tenant shall have the right to remove from the demised premises all removable fixtures erected thereon by him during the term of his lease, or of any renewal thereof, or of any successive leasing of the premises while he remains in possession in his character as tenant."

This amendment created no new right in the tenant. *Miller v. Bennett,* 239 Ill. App. 306. The special provision in the lease before us that the lessees "are to

erect a building to be attached to the north side of the present building (stables), . . . and at the expiration of this lease they shall have the privilege of removing said building . . . ,'' did not extend the time within which plaintiff could remove the building beyond the expiration of the lease. In *Mason v. Fenn,* 13 Ill. 525, a provision in the lease of a steam flouring mill, for the term of two years, permitting the tenants to put in the mill certain fixtures for which the lessor agreed to pay ''at the expiration of said term'' a price to be agreed upon, or the tenants should have the privilege of removing same ''at the expiration of two years,'' was construed as securing ''the tenant compensation for these improvements or the right to take them away at the end of the term.'' The court said, ''His right of removal continued so long as he was rightfully in possession.'' In *Dreiske v. People's Lumber Co., supra,* a lease of dock property expiring April 30, 1899, provided that ''at the termination of this lease'' the lessees ''shall have the right to and shall have removed from said premises'' buildings, machinery, boilers, foundations, and all other improvements made or erected on the premises by the lessees. The court said that this provision ''was evidently inserted for the purpose of removing any question, as between the parties, as to whether any erections which might be made by the lumber company during its lease became a part of the realty or were merely trade fixtures removable at the pleasure of the company *during the existence of the lease* . . . .'' (Emphasis added.) The tenant held over after the expiration of the lease until May 16, 1899, when it commenced to remove improvements. The lessor obtained a temporary injunction restraining further removals. The injunction was dissolved and lessor appealed. The bill showed that about April 1, 1899, lessor notified the lessee that its right of possession would expire April 30, 1899, and

on May 12, 1899, began suit in forcible detainer to recover possession of the premises. This suit was set for hearing May 19, 1899. The court said:

"If it is true, as alleged in the sworn bill, that the lumber company remained in possession of the demised premises after the 30th day of April, 1899, against the consent of plaintiffs in error and in direct violation of the provisions of the lease (and for the purposes of this decision that must be taken as true . . .), then it follows that the company was a trespasser, had no right to remove the improvements in question, and the injunction was improperly dissolved."

In *Fellows v. Johnson*, 183 Ill. App. 42, a farm lease for the term of five years, expiring February 28, 1913, reserved to the lessor the right to terminate the lease on the first day of any March during the term if he sold the premises and gave six months' notice. It also gave the tenant the right to remove any improvements put on the premises by him if called on to vacate the premises before the termination of the lease. Having sold the premises, the lessor gave notice July 13, 1911, to surrender possession March 1, 1912. The tenant surrendered possession without removing his improvements, and when he attempted later to remove them he was prevented by the then owner from doing so. By a replevin and trover action he sought the recovery of the improvements or their value. Judgment entered for the defendant was affirmed on appeal. The court held that the tenant "by failing to remove the same (improvements) during his term, or during the time he was in occupancy under the lease, lost his right to remove them," and said:

"Appellant's right to occupy or enter upon the premises expired with the termination of his lease and his surrender of possession. No Illinois case is cited, and we know of none, that would permit him to enter there-

after to remove improvements he had placed thereon. To hold that he could do so, would be to extend by implication the term of his lease as fixed by his contract, which does not seem to us consistent with the policy of our law or with the proper construction of written contracts.''

The court referred to the cases cited in the majority opinion herein and it recognized that ''Where the tenure of the tenant is uncertain and such that it may be determined unexpectedly to him, the rule requiring him to remove improvements during his possession as tenant is sometimes modified so as to allow a reasonable time for the removal of fixtures after the termination of the lease . . . ,'' but held the exception did not apply as the six months' notice ''certainly afforded ample time for removal within the period of his rightful occupancy.''

The lease in the instant case is not one under which ''the tenure of the tenant is uncertain and such that it may be determined unexpectedly to him.'' Tenancies of that nature are tenancies at will, under a lease from the life tenant, or a lease subject to termination on certain contingencies not controlled by the tenant. The tenure of plaintiff was as fixed and definite as language could make it—for a term commencing November 1, 1945 and ending December 31, 1948. It could not be determined before the latter date except for breach of its terms by plaintiff. Like most leases, it authorized defendant to terminate it upon default in payment of rent, and like every lease it was by the statute subject to termination for that default. As the right to terminate the lease arises only from the inability or unwillingness of the tenant to pay the rent, the tenure of the tenant is not such ''that it may be determined unexpectedly to him.'' In *Donnelly v. Thieben,* 9 Ill. App. 495, the court said:

603

"The relative rights of landlord and tenant in relation to the removal of trade fixtures, is clearly stated by Taylor in his treatise on Landlord and Tenant, Sec. 551, as follows: ' . . . The tenant's right to remove is rather considered a privilege allowed to him, than an absolute right to the things themselves. If he does not exercise the privilege before his interest expires, he cannot do it afterwards, because the right to possess the land and the fixtures as a part of the realty, vests immediately in the landlord; and although the landlord has no right to complain, if the land be restored to him in the same plight it was before he made the lease, *yet if the land is suffered to return to him with additions and improvements, even by forfeiture or notice to quit, he has a right to consider them as a part of his property.*' To same effect, see 1 Wash. on Real Prop. 28; Ewell on Fixtures, 137.'' (Emphasis added.)

This statement is quoted with approval in *Dreiske v. People's Lumber Co., supra.* See *Morey v. Hoyt,* 62 Conn. 542.

The record shows no equity in favor of plaintiff or undue hardship on her in the enforcement of the rule requiring removal of the improvements before her lawful possession as a tenant was terminated. There is no averment from which we can determine whether the removal of the building would reasonably require a day, week, month, or longer. Plaintiff was in possession unlawfully more than five weeks after the termination of the lease, but she made no attempt to remove the building until in the lawful execution of the writ of restitution she was forcibly ejected from the premises. No presumptions can be indulged in her favor (*Dunham v. Dunham, supra*), and it must be presumed that her failure to pay the rent was wilful, as was her refusal to relinquish possession after the termination of her lease. A tenant who breaches his contract is

not entitled to greater rights than the tenant who fully performs.

The complaint does not state a cause of action and was properly stricken. The judgment should be affirmed.