[In Bank. — January 31, 1883.]

# EDMUND MARKS, RESPONDENT, *v.* E. BLACK RYAN, APPELLANT.

LANDLORD AND TENANT — ERECTION OF BUILDINGS — LEASE. — In an action to recover the value of a dwelling-house and barn errected by a tenant on leased premises, it appeared that there were several successive leases, and that the buildings were erected during the first lease and remained upon the land when the subsequent leases were executed.  No provision for their removal was contained in either of the leases, nor were they referred to except in a covenant on the part of the tenant as set forth in the opinion of the court.  The complaint alleged that the buildings were the personal property of the plaintiff, and that the defendant had taken possession of them and prevented their removal.  On the trial of the case the plaintiff produced a conveyance from the tenant as evidence of his title.  The conveyance was executed during the term created by the last lease.  Afterwards, and before the expiration of the term, the landlord conveyed the premises to Charles Crocker.  The defendant was the agent of

Crocker, and the facts relied on as proof of a conversion by the former occurred after the conveyance to the latter. *Held*, that the plaintiff could not recover, that the buildings were a part of the realty and not personal property, and that the evidence failed to establish any right on his part to remove them.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts not stated in the syllabus appear in the opinion of the court.

*McAllister & Bergin*, for Appellant.

*Deuprey & Hutchinson*, for Respondent.

SHARPSTEIN, J.—By the assignment and specifications of error we are confined to the consideration of the simple question, whether the buildings, for the value of which the plaintiff recovered judgment in this action, were the personal property of the plaintiff at the time of the alleged conversion of them by the defendant.

The Pacific Glass Works, a corporation, was the owner of the premises upon which said buildings were standing, and on the 18th day of December, 1867, executed a lease of said premises to one John Anderson, for the term of one year, who before the expiration of that term erected upon said premises the house and barn in controversy. At the expiration of that term said Pacific Glass Works made and said John Anderson accepted another lease of the said premises, which contains the following clause:—

"And that at the expiration of the said term the said party of the second part will quit and surrender the said premises in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted, and the said party of the second part further covenants and agrees that during his occupancy of the said demised premises he will not put nor suffer to be put thereon, nor use the same, or any part thereof, nor the buildings thereon, or to be erected thereon, nor suffer the same to be used by any other person or persons, for the erection or working of any still, distillery, apparatus, or

appliances for the illicit or other distillery or manufacture of spirituous or other liquors."

After that two other leases of the same premises were executed between the same parties, for the same rent, and on the same terms as that last above mentioned, differing from that only in dates and length of terms. The last of said leases is dated April 15, 1875, and is for the term of two years. On the 17th day of July, 1875, Anderson executed what purports to be a conveyance of the house and barn in controversy to the plaintiff in this action. "At the time of the execution and delivery of said conveyance Annie Langstone was, and had been for between two and three years, in occupation of the land, house, and barn mentioned in the complaint, as tenant of said Anderson, paying him therefor during that time the monthly rent of twenty-five dollars; and after the execution of said conveyance the plaintiff duly notified her thereof, and thereafter the plaintiff collected rent of her therefor, twenty-five dollars per month, for one or two months, and twenty dollars per month thereafter, until about February, 1876, one John J. Haley notified her not to pay any more rent to plaintiff, but to pay the rent to Charles Crocker, to whom he, Haley, said the land in the complaint described belonged."

Annie Langstone testified that she paid rent to the plaintiff five or six months, and that she then ceased paying rent to him because Mr. Haley notified her not to pay any more rent to plaintiff. After that she "paid rent to D. W. Parkhurst, the agent." At times to the defendant; i. e., when she did not have the rent when Mr. Parkhust called, she had to go to the office and pay it to defendant.

On the 9th of March, 1876, Chester & Hyde, who had a contract with the plaintiff to remove said building off of said lot, went upon the premises, and while making preparations to remove said buildings were handed the following: —

"SAN FRANCISCO, March 9, 1876.

"*To Edmund Marks, his employees, Hyde & Chester, house-movers, their servants and agents*—Notice: You are hereby notified not to move, displace, or in any manner disturb a certain house situated on the Nuevo Potrero and now occupied by Mrs. Anna Langstone. If you fail to take notice as above, and

persist in removing said house, you will be prosecuted according to law.

" CHAS. CROCKER,

" By E. RYAN, Agent.

After receiving this nothing more was done toward removing said buildings, and the plaintiff afterwards commenced this action.

It is contended that defendant had no right or authority to interfere with the removal of said buildings. But that in our view of the case is not a material fact. If the plaintiff owned the buildings and had a right to remove them no one had any right to interfere. If he did not have a right to remove them, the defendant did not, by reason of interfering in the manner and to the extent that he is shown to have interfered, render himself liable to pay for the buildings in an action for their conversion.

If we follow the cases of *Merritt* v. *Judd*, 14 Cal. 60, and *Jungerman* v. *Bovee*, 19 Cal. 355, we must hold that the facts proven in this case are not sufficient to justify the finding " that said buildings were at the date last aforesaid (March 9, 1876), the personal property of the plaintiff."

Neither of those cases is distinguishable in principle from this case. The earlier one certainly is not. According to the doctrine of those cases upon the execution of a new lease the lessee " is in the same situation as if the landlord, being seized of the land, had leased both land and fixtures to him." In that case we do not think that any one would claim that the lessee could remove the buildings, or that they were not fixtures annexed to the land.

The correctness of the doctrine here laid down is doubted, or, more strictly speaking, denied in *Kerr* v. *Kingsbury*, 39 Mich. 150. The Supreme Court of Massachusetts, however, in the same year, 1878, said : " When the same tenant continues in possession under a new lease containing different terms and conditions, making no reference to the old lease, reserving no rights to the lessee in fixtures annexed during the previous term, and not removed before its expiration, and containing the covenant to deliver up the premises at the end of the term in the same condition, this is not the extension of or holding over under an

.existing lease; it is the creation of a new tenancy. And it follows that whatever was a part of the freehold when the lessee accepted and began his occupation under the new lease must be delivered up at the end of the term, and cannot be severed on the ground that it was put in as a trade fixture under a previous lease which has expired. The failure of the lessee to exercise his right to remove during the former term, or to reserve it in his new contract, precludes him from denying the title of his landlord to the estate and the fixtures annexed, which have become part of it. The occupation under the new lease is in effect a surrender of the premises to the landlord under the old." (*Watriss* v. *National Bank,* 124 Mass. 571–576.) And the New York Court of Appeals, in *Loughran* v. *Ross,* 45 N. Y. 792, said: "A surrender of the premises, after the expiration of the lease is such an abandonment as vests the title in the landlord. In reason and principle the acceptance of a lease of the premises, including the buildings, without any reservation of right or mention of any claim to the buildings and fixtures, and occupation under the new letting, are equivalent to a surrender of the possession to the landlord at the expiration of the first term." And in Ewell on Fixtures (p. 174), this is said to be well settled.

If that be so it logically follows that the rights of the plaintiff and his grantor, Anderson, must be viewed in the same light as they would be if the buildings had been erected before, and had been standing upon the land at the time of the execution of the first lease; or as if the second or any subsequent lease had been in fact the first. And viewed in that light, it is quite clear that the buildings standing upon the premises were a part of the realty, and would have passed with it by deed, although not specifically mentioned in it.

And it appears by the record that prior to the time of the alleged interference of the defendant with the removal of said buildings the premises had been conveyed by Anderson's lessors to other parties.

There can be no question that in the absence of any agreement to the contrary a dwelling-house and barn erected upon the land of his landlord by a tenant would, when so erected, be annexed to the realty. In *Van Ness* v. *Packard,* 2 Peters, 137,

Story, J., delivering the opinion of the court, observed that " if the house were built principally for a dwelling-house for the family, independently of carrying on the trade, then it would doubtless be deemed a fixture falling within the general rule, and immovable."

We think it quite clear that if the consequence of taking a lease of the premises after said buildings had been erected thereon, was to place the lessor and the lessee in the same positions that they would have respectively occupied in the absence of any former lease, the finding of the court that said buildings were, on the 9th day of March, 1876, the personal property of the plaintiff, is not sustained by the evidence, and the judgment and order appealed from must be reversed.

Judgment and order reversed, and cause remanded for new trial.

MORRISON, C. J., McKINSTRY, J., ROSS, J., THORNTON, J., and McKEE, J., concurred.

Petition for a rehearing denied.