THE SANITARY DISTRICT OF CHICAGO

*v.*

JOHN A. COOK.

*Opinion filed November 8, 1897.*

1. APPEALS AND ERRORS—*exceptions to court's action on referee's report preserve questions of law.* Exceptions taken to the trial court's action in sustaining or overruling objections to the report of a referee appointed under the act to provide for referees in common law cases, (Rev. Stat. 1874, p. 847,) preserve for review, on appeal, all questions of law which could have been saved by submitting propositions of law.

2. LANDLORD AND TENANT—*when tenant waives right to remove "trade fixtures."* A tenant waives his right to remove trade fixtures where, at the expiration of the lease under which they were erected, he takes a new lease which neither reserves his right to the fixtures nor recognizes his right to remove them under the former lease, but contains covenants that he will keep the premises in good repair and deliver them up in as good condition as when received.

3. ESTOPPEL—*one not estopped by admissions of attorney which are withdrawn before acted upon.* A landlord is not estopped from claiming fixtures by an admission of his attorney that he did not intend to claim them, where such admission was withdrawn before it was acted upon and his claim of ownership was thereafter treated by the interested parties as a disputed question.

*Cook* v. *Sanitary District of Chicago,* 67 Ill. App. 286, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

In September, 1892, the Sanitary District of Chicago filed its petition in the circuit court of Cook county to condemn for its right of way, among others, a number of tracts of land belonging to Thomas and Seth Piper and others, and also two tracts, known in the case as Nos. 68 and 70, belonging to John A. Cook, on which there were certain buildings and other improvements. The sanitary district settled with the Pipers, while the suit was pending, for their interests in the land, and the verdict of the jury was subsequently rendered in the cause awarding to the owner of tracts 68 and 70, who was John A. Cook, the appellee, the sum of $43,845, and finding that the value of the buildings, fences and other improvements situated upon tract 70 was $1575.00. This last amount is the amount in controversy here, the money having been deposited in the Globe National Bank pending the determination of its ownership. In October, 1893, Cook served a notice on the district that he would on a certain day ask for an order requiring the money to be paid to him, claiming that he was the only person entitled to it. By agreement of the parties, made in open court, the cause was referred to Thomas Taylor, Jr., to take proof and report to the court his conclusions of law and fact. It was afterwards stipulated by the parties that all irregularities in the order of reference, taking testimony, making objections to the report and filing exceptions thereto, be waived, and it was agreed that the same should have the full force and effect of a reference by agreement, pursuant to chapter 117 of the Revised Statutes, providing for the appointment of referees in common law cases. It was also stipulated that the improvements consisted of a large stable and hay barn, dwelling, corn-crib, cow house, some fences, well, pump and drinking trough.

The evidence before the referee disclosed that the improvements were put on the land several years prior to 1883 by the Pipers; that the barn was constructed of eighty telegraph poles set in the ground, to which the

rest of the lumber was attached, and that the stable was largely made of scantlings set in the ground, and that it would be impossible to move the buildings without tearing them to pieces. It seems that the Pipers had either a five or ten-year lease, during which time they put on these improvements. Neither this lease nor its contents were given in evidence. After the lease had expired, and in 1883, a new lease was made between the same parties for a period of five years, which was afterward extended, from time to time, until the sanitary district took possession by virtue of the condemnation proceedings. This lease did not reserve to the tenant the improvements, but it contained the following: "And as additional rents said Piper covenants and agrees, at his own expense, to keep in good repair the fences upon said demised premises. * * * And the said party of the second part further covenants with said party of the first part, that the said party of the second part has received said demised premises in good order and condition, and that at the expiration of the time in this lease mentioned, or sooner determination thereof by forfeiture, he will yield up the said premises to said party of the first part in as good condition as when the same was entered upon by said party of the second part, loss by fire or inevitable accident or ordinary wear excepted, and also will keep the said premises in good repair during this lease at his own expense." The testimony further showed, that during the time negotiations were pending between the district and the Pipers and Cook in regard to acquiring their interests in the premises, the attorney for the Pipers disclaimed their ownership of the improvements; that the attorney for Cook at first claimed that his client did not own them, but after seeing the lease he informed the district that he did claim them; that a dispute at the trial of the cause as to their ownership, and before a settlement was reached with the Pipers, led the jury to make a separate finding as to the value of the improvements.

The district made a settlement with the Pipers and took a warranty deed for the tracts belonging to them, and also a quit-claim for certain tax titles held by them, including in said quit-claim all their interest in any buildings situated on the land of John A. Cook and in the leasehold of the same land. This clause was put in the deed at the request of the attorney for the district, the attorney for the Pipers at the time disclaiming that they had any rights in the improvements. He testified positively that nothing was allowed in the settlement for these improvements. The district claims the money by virtue of the settlement with the Pipers and the quit-claim deed to these improvements.

The referee made his report, finding that the buildings and improvements were attached to the freehold and erected with the intention of becoming fixtures; that by reason of the tenant accepting a new lease without reserving any right to remove them they had become a part of the real estate; that there was no estoppel against Cook by reason of the admissions of his attorney, the same having been retracted and corrected before the final settlement was made with the Pipers; that at the time of making such settlement the district knew of Cook's claim of ownership, and that their value was not included in the settlement with the Pipers, and that Cook was entitled to the money. All of the findings of the referee, as well as his recommendations, were objected and excepted to. The referee's recommendations were overruled and judgment for the amount in controversy was entered in favor of the district. From this judgment Cook appealed to the Appellate Court for the First District, and that court reversed the judgment and remanded the cause with instructions, the effect of which was to direct the circuit court to find that Cook was entitled to the money and to enter judgment therefor in his favor. The sanitary district then took this appeal to this court.

F. W. C. HAYES, and SEYMOUR JONES, for appellant:

A tenant may remove all fixtures of a chattel nature erected by him on leased premises for purpose of ornament, domestic purpose or to carry on a trade. *Lawton* v. *Lawton*, 3 Ark. 13; *Foley* v. *Addenbrooke*, 13 M. & W. 173.

When a tenant makes erections of a permanent character without the assent of his landlord, express or implied, they become fixtures which he has no right to remove; but when the annexation is made under authority, express or implied, the rule is otherwise; and authority may be implied when the erection is necessary to the enjoyment of the premises for the purposes for which they were let. Wood on Landlord and Tenant, p. 876, sec. 521; *Fuller* v. *Taylor*, 39 Me. 519.

The law regards with peculiar favor the rights of tenants, as agents for the landlord, to remove articles annexed by them to the freehold, and extends much greater indulgence to them in this respect than it concedes to executors, remainder-men or any other class of persons. *Taylor* v. *Townsend*, 8 Mass. 416; *Whiting* v. *Brastow*, 4 Pick. 311; *Miller* v. *Baker*, 1 Metc. 31; *Tate* v. *Blackburn*, 48 Miss. 1.

The law does not, in strictness, require of a tenant that he shall remove trade fixtures during the term, but only before he surrenders possession, and during the time that he has a right to regard himself as occupying in the character of tenant. *Penton* v. *Robart*, 2 East, 88; *Weston* v. *Woodcock*, 7 M. & W. 14.

ARTHUR B. WELLS, for appellee:

A tenant may remove trade fixtures erected by him during his term provided he removes them before the expiration of his term, or, in case he is allowed to remain in possession after the expiration of the term without any new lease being executed or the old lease renewed, his right continues as long as, under such circumstances, he retains the possession. But if he accepts a new lease without reserving the right to so remove his trade fix-

tures he is held to have abandoned that right. *Leman* v. *Best*, 30 Ill. App. 323; *Chase* v. *Wire Co.* 57 id. 205; *Loughran* v. *Ross*, 45 N. Y. 792; *Watriss* v. *Bank*, 124 Mass. 571; *Hedderick* v. *Smith*, 103 Ind. 203; *Marks* v. *Ryan*, 63 Cal. 607; *Talbot* v. *Cruger*, 81 Hun, 504; *Carlin* v. *Ritter*, 68 Md. 478; *Elwes* v. *Mawe*, 2 Smith's L. C. 214; Taylor on Landlord and Tenant, (8th ed.) sec. 552; Ewell on Fixtures, 172, *et seq.*

Mr. JUSTICE CARTER delivered the opinion of the court:

As the Appellate Court made no finding of facts in its judgment of reversal we must assume that it found the facts to be as found by the circuit court. Appellant here contends that as no propositions to be held as law in the decision of the case were submitted to the trial court no questions of law are presented here, and as all questions of fact have been finally settled, nothing can be done by this court but to affirm the judgment.

We are of the opinion that the report of the referee of his conclusions of law and fact under the statute, and the objections and exceptions to that report, raised for decision all such questions of law as fully as could have been raised by propositions of law had they been presented. The statute provides that the referees "shall have authority to take testimony in such cause, and report the same in writing, together with their conclusions of law and fact, to the court," and that either party may except to such report. Appellant itself filed eight exceptions to the report, raising questions of law, which were sustained by the court in overruling the recommendations of the referee and rendering judgment for the district. Under the statute parties can raise, by exceptions, any question of law for decision as readily as by submitting propositions to be held as law. There was but little dispute as to the evidence.

The only questions of law raised relate, first, to the effect of the subsequent leases of Cook to the Pipers of the premises containing the buildings, etc., after the

expiration of the lease under which such buildings were erected by the Pipers; and second, to the question whether or not Cook was estopped from claiming these improvements by the declarations of his attorney disclaiming his ownership.

Conceding that it is settled by the evidence that the Pipers erected the buildings, etc., on the leased premises while holding under a former lease, as agricultural or trade fixtures, and had the lawful right to remove and retain them while holding under such former lease, the question remains whether such right was not lost by the expiration of such lease without such removal, and the taking of the subsequent leases in evidence which contained no reservation of such right, but, on the contrary, contained the covenants before set out binding the lessees to keep up the fences, to keep the premises in good repair, and to deliver up the same in as good condition as they were when entered upon. The record does not show the contents of the original lease.

We have been cited to no case, and know of none, in which the precise question here presented has been considered by this court. In *Mason* v. *Fenn*, 13 Ill. 525, it was said (p. 529): "As between landlord and tenant, improvements put on the demised premises by the latter for purposes of trade or manufacture, and which can be detached without material injury to the estate, may be removed by him before he quits the possession." As to this proposition there can be no doubt. But the great weight of authority seems to be that where, at the expiration of a lease during which trade fixtures have been  erected on the premises by the tenant, a new lease is taken of the same premises containing no reservation of any right or claim of the tenant to the fixtures still remaining on the premises and without recognizing the right of the tenant to remove them, such fixtures erected under the former lease cannot be removed by the tenant during or at the end of the new lease, notwithstanding

his actual possession of the premises has been contin-
uous.   *Fitzherbert* v. *Shaw*, 1 H. Bl. 258; *Heap* v. *Barton*, 74
E. C. L. 273; *Sharp* v. *Milligan*, 23 Beav. 419; *Thresher* v.
*Water Works Co.* 2 B. & C. 608; *Merritt* v. *Judd*, 14 Cal. 59;
*Loughran* v. *Ross*, 45 N. Y. 792; *Watriss* v. *Bank*, 124 Mass.
571; *Carlin* v. *Ritter*, 68 Md. 478; *Hedderick* v. *Smith*, 103 Ind.
203; *Marks* v. *Ryan*, 63 Cal. 607; Taylor on Landlord and
Tenant, sec. 552; Ewell on Fixtures, 174, 175; Tyler on
Fixtures, 437-439; Wood on Landlord and Tenant, sec.
532.   The reason given is, "because the fixtures set up
on the premises at the time of the lease are part of the
thing demised, and the tenant, by accepting a lease of
the kind without reserving his right to the fixtures, has
acknowledged the right of his landlord to them, which
he is afterward estopped from denying."

The only cases *contra* are *Kerr* v. *Kingsbury* and *Second
Nat. Bank* v. *Merrill Co.*   In *Kerr* v. *Kingsbury*, 39 Mich. 150,
leases had been executed for a certain term, all expiring
on the same date, in which leases there was a provision
allowing the lessees time for the removal of the buildings
they might erect.   Afterwards, the lessor having sold his
real estate to another, a new lease was taken from the
vendee to expire at the same time as the former leases,
and no reason appeared for doing so, unless it was to
obtain some lots not included in the old leases.   Judge
Cooley, after stating the rule that the tenant must re-
move trade fixtures during the term, or while he still has
a right to regard himself as occupying in the character
of tenant, before surrendering possession, in delivering
the opinion of the court said: "But why the right should
be lost when the tenant, instead of surrendering posses-
sion, takes a renewal of his lease, is not very apparent.
There is certainly no reason of public policy to sustain
such a doctrine.   On the contrary, the reasons which
saved to the tenant his right to the fixtures in the first
place are equally influential to save to him on a renewal
what was unquestionably his before.   What could possi-

bly be more absurd than a rule of law which should, in effect, say to the tenant who is about to obtain a renewal, 'If you will be at the expense and trouble and incur the loss of removing your erections during the term, and of afterwards bringing them back again, they shall be yours, otherwise you will be deemed to abandon them to your landlord.'" He then cited *Merritt* v. *Judd*, 14 Cal. 59, and proceeded to review the authorities therein cited to show that they do not bear out the decision of the California court. However, the case of *Thresher* v. *East London*, 2 B. & C. 608, which he distinguishes, is directly in point in the case at bar. That case, he said, "was decided upon the construction of a covenant contained in the new lease, by which the tenant undertook to repair the erections and buildings, and at the end of the term the premises so repaired, etc., to leave and yield up," etc. In commenting on *Loughran* v. *Ross, supra,* he used the following language: "The case of *Loughran* v. *Ross*, 45 N. Y. 792, is in accord with the case in California. In that case Mr. Justice Allen, speaking for the majority of the court, says: 'In reason and principle the acceptance of a lease of the premises, including the buildings, without any reservation of right or mention of any claim to the buildings and fixtures, and occupation under the new letting, are equivalent to a surrender of the possession to the landlord at the expiration of the first term. The tenant is under a new tenancy, and not under the old; and the rights which existed under the former tenancy, and which were not claimed or exercised, are abandoned as effectually as if the tenant had actually removed from the premises, and after an interval of time, shorter or longer, had taken another lease and returned to the premises.' This is perfectly true if the second lease includes the buildings; but unless it does so in terms or by necessary implication, it is begging the whole question to assume that the lease included the buildings as a part of the realty. In our opinion it ought not to be held to include

them unless, from the lease itself, an understanding to that effect is plainly inferable."

The Supreme Court of Wisconsin, in the case of *Second Nat. Bank* v. *Merrill Co.* 69 Wis. 501, cited *Kerr* v. *Kingsbury*, *supra*, with approval.   Still, in the opinion it was said: "For the reason that the great preponderance of the evidence in this case clearly shows that it was understood that the tenant's right to his fixtures and machinery should remain in him notwithstanding the acceptance of a lew lease, and because there is nothing in the terms of the new lease which must necessarily be construed as a letting by the landlord to the tenant of such fixtures and machinery and an acceptance by the tenant of a lease of the same, with a covenant to return them to the landlord at the end of the lease, we think the right of the tenant to remove the trade fixtures and machinery placed upon said premises by him has not been lost,—that such fixtures and machinery are still owned by him and that he has a right to remove the same."   In another part of the opinion the court said: "If he (the tenant) accepts a lease which in express terms recognizes the right of the landlord to the fixtures, and he agrees to pay rent for their use thereafter, and keep them in repair, and surrender their possession at the end of the new term, a strong case would be made out in favor of a surrender of the fixtures to the landlord by the acceptance of such new lease, and it would require very clear evidence that, notwithstanding the acceptance of such new lease, there was an agreement that the title to the fixtures should remain in the tenant.   If it should be admitted that the general words of description in the new lease would, under ordinary circumstances, be a lease of the fixtures as well as of the land and buildings, still, the lease only raises a presumption that it was intended to cover the fixtures, and it is open to proof whether it was in fact intended to cover such fixtures or whether they were intended by both parties to be excepted therefrom."

In *Carlin* v. *Ritter*, 68 Md. 478, the doctrine of *Kerr* v. *Kingsbury*, as stated in the opinion of Judge Cooley, is disapproved in the following language: "We cannot go along with him in his reasoning. We are not able to discover anything 'absurd' in the rule laid down by the other authorities. * * * If it was the intention of the parties in this or any other similar case that the right to remove fixtures should continue, nothing was easier than to insert in the lease a clause to that effect; and it seems to us reasonable to infer, from the absence of such a clause, that it was their intention that this right should no longer continue. * * * We neither know of, nor can we recognize, any 'public policy' which ought to induce the courts to place a different construction or give a different effect to a lease between landlord and tenant from that given to other contracts between other parties, or to set aside a well-settled rule or principle of law in order to promote the interests of either party thereto." In this case the terms of the lease were: "The premises known as the City Hotel, * * * together with all the rights, appurtenances and privileges thereunto belonging or in anywise appertaining," and the court said, in construing the same: "We take it to be clear that the descriptive terms in this lease are sufficient to convey to the lessee the fixtures in dispute, if they had been previously placed upon the premises by the landlord or had been left there by a previous outgoing tenant. There is, it is true, no express covenant on the part of the lessee to keep the premises in repair and to restore them in good condition."

The Texas Court of Civil Appeals, in *Wright* v. *Macdonnell*, 27 S. W. Rep. 1024, quotes the general rule, and says that *Carlin* v. *Ritter*, *supra*, answers and completely overthrows Judge Cooley's position. But the Supreme Court of Texas, on appeal, in the same case, (88 Tex. 140,) while conceding the rule as established by the weight of authority, inclines to the Cooley theory, and says: "The opinion

of Judge Cooley in the former case is an able presenta-
tion of that side of the controversy, and is very difficult
to answer.    *    *    *·   But, as we view the case before us,
it is not necessary for us to determine the naked question.
The rule recognized by the majority of the courts is neither
inflexible nor arbitrary.  It must yield to the intention of
the parties to the lease as deduced from the language
employed, when viewed in the light of the circumstances
attending the transaction."

In *Marks* v. *Ryan*, 63 Cal. 107, the case of *Kerr* v. *Kings-
bury*, *supra*, is cited, but the court, after citing *Watriss* v.
*Bank*, *supra*, *Loughran* v. *Ross*, *supra*, and Ewell on Fix-
tures, 174, followed the weight of authority, and adhered
to the doctrine of its former decisions as laid down in
*Merritt* v. *Judd*, 14 Cal. 60, and *Jungerman* v. *Bovee*, 19 id. 355.

We see no reason for departing from the general com-
mon law rule, and must hold that the Pipers lost their
right to the improvements by accepting the new leases,
and that they did not pass to the sanitary district by the
quit-claim deed.  Besides, the covenants in the new leases
would seem to put the question in this case beyond the
realm of reasonable controversy.

Even if it be conceded that the attorney of Cook had
authority to bind him by the representations or admis-
sions made to the attorney of the district that Cook had
no claim to the improvements, still, as the statement was
corrected and withdrawn before appellant had acted upon
it to its prejudice, and by the later action of both parties
on the trial in the condemnation proceedings the owner-
ship of the improvements was treated as a disputed ques-
tion, to be left for future determination, we see no ground
from which an estoppel against Cook could arise.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*