## Charles H. Smyth et al. v. Horace H. Stoddard.

1. FIXTURES—*Pass by Deed of Land to Party Without Notice of Agreement Between Grantor and Lessee.*—The tenant of land entered into an agreement with the landlord whereby the tenant should either receive a fair consideration for a certain covering and stalling which he had erected upon the land, or should have a reasonable time within which to remove it. The landlord afterward deeded the land to a party who had no notice of the agreement. *Held*, that the covering and stalling passed with the land.

2. PRACTICE—*Where the Master's Finding Has Been Approved by the Chancellor.*—Where the finding of the master who saw the witnesses and heard their testimony has received the sanction of the chancellor, it should not be disturbed unless clearly and palpably wrong.

3. INTEREST—*When Recoverable.*—Where defendants' action is a virtual appropriation of plaintiff's property, they are liable for the value thereof from the date of its appropriation, with interest, the latter being in the nature of damages.

4. LANDLORD AND TENANT— *Trade Fixtures Must Be Removed on or Before the Expiration of the Lease.*—Unless trade fixtures are removed by the tenant on or before the expiration of his lease, they become a part of the realty.

**Bill for an Injunction.**—Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed January 26, 1903.

**Statement.**—One Robert C. Seyd, June 1, 1893, filed a petition against appellee, Stoddard, to restrain the latter from removing a certain covering and stalling which had been built by him upon stone foundations for a barn on a farm near La Grange, Ill., then occupied by Stoddard as a tenant of said Seyd. A temporary injunction was issued according to the prayer of the petition. Stoddard filed an answer, in which he claimed to be owner of said covering and stalling by virtue of an agreement between him and the appellants, dated August 13, 1888, the appellants then being the owners of the farm and Stoddard their tenant under a written lease, and claimed the right to remove the said covering and stalling under said agreement, or that appellants should pay him for the same. Stoddard also filed a cross-bill, making said Seyd and appellants parties,

and asking that the question of ownership of the covering and stalling should be determined, and if found in appellee, then that the injunction be dissolved and he be given a reasonable time to remove the same; and if the ownership should be found in Seyd, then that an accounting be taken of the fair value of the covering and stalling, and that appellants be decreed to pay him therefor, and for general relief.   Appellants answered the cross-bill, by which they admit the agreement of August 13, 1888, but claim that Seyd, who purchased from them by deed dated November 24, 1891, knew of their agreement with appellee, and that the latter was not entitled to an accounting against them as claimed by the cross-bill, and in no event were they liable for the stalling and covering at the time it was built, but only at the time of the accounting, if any should be ordered.   Appellants also filed a supplemental answer, from which it appears, among other things, that appellee continued to occupy said premises as tenant of Seyd, E. S. Dreyer and a receiver of the premises, respectively, from the year 1893 to February 1, 1899, ever since which last date they have been the owners of the farm; that appellee had wrongfully removed a blacksmith shop and corn-crib from the premises in March, 1899, for which they claimed to be reimbursed, and that appellee was guilty of laches in not asserting his rights under the contract of August 13, 1888, earlier.   They also filed a cross-bill, in which they make the same claims as in their answer.

Seyd answered the cross-bill of Stoddard, and issues were made upon the original petition, as well as upon the cross-bill of Stoddard and the cross-bill of appellants. The cause was referred to a master to take proofs and report his conclusions.   The master took evidence and made a report, to which objections were interposed by appellee and appellants, which were all overruled and ordered to stand as exceptions before the court.   Upon a hearing before the chancellor all exceptions to the master's report were overruled, the report confirmed, and a decree rendered against appellants for $3,270.18 and costs, including

$232 for master's fees and expenses, to review which this appeal is taken.

N. M. JONES, attorney for appellants.

MERRIAM & PHELPS, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

The principal contest in this case arises under the agreement of August 13, 1888, between appellants and appellee, referred to in the statement, which, in substance, provides that appellee should be authorized to erect on the farm then occupied by him as tenant of appellants, a covering and stalling upon and over a stone foundation for a barn then on the farm, at his expense. The agreement then proceeds as follows:

" And we hereby agree that whenever you surrender and deliver up possession of said farm to us, at the expiration or termination of any lease you may hold from us, that we will either pay you a fair consideration for said covering and stalling at such time, or we will give you a reasonable time within which to remove said covering and stalling from said stone foundations and from said premises."

The master found, in substance, as follows : That appellants made a lease of said farm on October 25, 1887, to appellee, running to April 30, 1889, under which the latter occupied the farm; that on the day of its date the above recited agreement was made, pursuant to which appellee erected the covering and stalling in question; that the lease was by verbal and written extensions continued, and appellee occupied said farm as tenant of appellants until April 30, 1893, but, in the meantime, by deed dated November 24, 1891, appellants conveyed the premises to Seyd, which deed was recorded March 8, 1892; that no arrangement was made between appellants and Seyd as to the covering and stalling in question, and it did not appear that the latter had any notice, at the time of his purchase, of appellee's rights under the agreement of August 13, 1888; that about April 5, 1893, appellee served on the agents of Seyd and the agent and attorney of appellants a notice of his claims under the

Smyth v. Stoddard.

agreement of August 13, 1888, and asked that he either be paid for the barn (meaning the covering and stalling), or be given a reasonable time in which to remove the same; that June 1, 1893, Seyd filed his bill referred to in the statement, to prevent appellee from removing the said stalling and covering, and states the said respective cross-bills of appellee and appellants referred to in the statement and the subsequent possession of appellee of said premises, in substance as stated in the supplemental answer of appellants to the cross-bill of appellee, and that his possession was terminated in March, 1899; that in 1893, when the lease of appellants to appellee was about to expire, the latter made arrangements to vacate the farm, removed some of his property therefrom, and while so engaged entered into negotiations with Seyd, by which the latter made a lease to appellee of the farm at a reduced rental, under which lease and subsequent extensions he retained possession of the farm until March, 1899; that under a verbal arrangement made in May or June, 1894, with E. S. Dreyer, who was at that time the owner of the farm, appellee was permitted to erect upon the premises a corn-crib and straw-shed, and to place thereon a blacksmith shop, all of which were to be removed from the farm at the expiration of appellee's lease, unless purchased by Dreyer; that on November 1, 1897, appellee took a lease from one Walker, the receiver of said premises appointed in a foreclosure proceeding, which expired January 31, 1899, at which latter date appellants became the owners of the farm through the foreclosure proceeding; that after the expiration of the receiver's lease, appellee, without the consent of the receiver or appellants, removed the corn-crib and blacksmith shop from the premises; that the corn-crib rested upon cedar posts set in the ground about fifteen inches, and that the blacksmith shop rested upon two poles attached to the bottom of either side of the building and could be removed at will without in anywise disturbing the realty.

The master further found that by the deed of appellants to Seyd, the title to the real estate and all its appurtenances

passed to Seyd, the latter having no notice of appellee's rights by virtue of the agreement of August 13, 1888, and that appellee could claim nothing as against Seyd, but that his only right to relief was as against appellants; that appellants, by the sale to Seyd, rendered themselves incapable of performing that part of their agreement with appellee by which 'he could be permitted to remove the barn at the expiration of their lease to him, and that appellants, by their sale to Seyd, obtained from him the value of the barn, for which they should account to appellee; and that appellee was entitled to the value of the barn (meaning the covering and stalling) as it was on April 30, 1893, with interest at five per cent per annum.

The master then, after discussing at considerable length the conflicting evidence, finds the value of the barn to be $2,394.04, and of the corn-crib $85, and holds that the value of the crib should be credited to appellants, with interest at five per cent per annum, for the reason that the corn-crib was a part of the realty and was wrongfully removed by appellee.

The master further finds that appellee should be charged and appellants credited with $50, the fair rental value of the farm for the month of February, 1899, during which month appellee occupied it after the expiration of his lease from Walker, the receiver, and interest thereon at five per cent from March 1, 1899.

The master states the account between appellee and appellants upon the basis of his said findings, and fixes the amount due from appellants to appellee as $3,253.77, for which he recommends the entry of a decree. The chancellor approved the master's report, and to the amount found by the master added interest at five per cent per annum on $2,394.04, from the date of the master's report to the entry of the decree, making a total of $3,270.18.

For appellants it is claimed that there was error in making the preliminary injunction against the removing of the covering and stalling perpetual, but we are clearly of the opinion that the master and chancellor were right in find-

ing that the title to the covering and stalling in question passed by the deed of appellants to Seyd, and thereby appellants rendered themselves incapable, as against Seyd, of allowing a removal. This was a virtual appropriation of appellee's property by appellants, the value of which, it must be held, they received from Seyd, and the fact that after a lapse of some seven years they again became the owners of the property, does not, in our opinion, change the relative rights of the parties.

It is claimed for appellants that the master and chancellor erred in finding that appellee occupied the premises under leases and extensions of leases made by appellants to appellee until the 30th of April, 1893, but after a careful examination of the evidence we think that finding is justified. It is true that some of the allegations of appellee's pleadings would seem to point to a different conclusion, viz., that appellants' last lease to appellee expired April 30, 1892, but even if this can be said to be the true situation, it would not change the liability of appellants to appellee, as found by the court, for the reason that appellants, by the sale and conveyance of the property to Seyd, rendered it impossible for them to carry out their agreement of August 13, 1888, with appellee, except by paying him the value of the covering and stalling.

Another claim is made that the court erred in finding that appellee offered to surrender the premises to appellants on April 30, 1893, or at any other time, for the reason, as it is claimed, that no notice was served upon appellants to that effect, but only upon one Ward, who was in the office of Mr. Jones, the attorney of appellants, they being non-residents.

We think there is sufficient evidence in the record to show that Mr. Jones was at the time of the service of the notice the agent of appellants, and represented them with regard to this property in a general way, and that the service upon Mr. Ward in his office (Ward accepted service of the notice for Mr. Jones) was a sufficient service upon the latter. No claim is made that Mr. Ward was not Mr.

Jones' representative.  It appears from the evidence that
Mr. Jones made leases and extensions of leases for appel-
lants to appellee from time to time, before the service of
this notice, collected the rents under said leases for appel-
lants, and signed for appellants their agreement with appel-
lee of August 13, 1888.

If, however, Mr. Jones was not such an agent of appel-
lants as that service of notice upon him would be good as
to them, that fact should not change the result in this case.
As has been stated, the respective rights of appellee and
appellants under the agreement of August 13, 1888, became
fixed by the sale and conveyance to Seyd.

Counsel for appellants with great earnestness argue that
the court erred in finding the value of the covering and
stalling to be $2,394.04, and that the finding is excessive
and unconscionable; also that the date of April 30, 1893,
for fixing that value was wrong, and that, in any event, it
should have been in March, 1899.

We have carefully read all the evidence in the light of
counsel's argument, and can not say that the finding of the
master in that regard is clearly and palpably wrong.  One
item contained in the estimate of the witnesses, viz., a pump
valued at $100, we think should not have been included,
since it could not come within the terms of the agreement
of August 13, 1888.  If, however, this item is wholly
excluded from the evidence, the valuations placed upon the
covering and stalling alone by appellee's witnesses is larger
than the amount allowed therefor.  The evidence of value
is conflicting, and while we think the amount allowed by
the master for the covering and stalling is somewhat large,
it is, in our opinion, justified by the evidence.  The master
saw the witnesses and heard their testimony, and his find-
ing, having received the sanction of the learned chancellor,
should not be disturbed unless clearly and palpably wrong.
Siegel v. Andrews & Co., 181 Ill. 350–6; Fabrice v. Von
der Brelie, 190 Ill. 460–5: Hubbard v. Hubbard, 198 Ill.
621–4; Arnold v. North West. Tel. Co., 199 Ill. 201–4.

The rights of the parties under their agreement having

been fixed by the sale to Seyd, we think there was no error in estimating the value of the covering and stalling as of April 30, 1893. It might well have been fixed a year earlier upon appellants' theory that no lease from them to appellee existed after April 30, 1892.

A further claim is made that the court erred in allowing interest to appellee, but no argument is made in this respect, nor is any authority cited in support of the claim. The action of appellants was a virtual appropriation of appellee's property, and made them liable for the value thereof from the date of its appropriation, with interest, the latter being in the nature of damages. Sturges v. Keith, 57 Ill. 451–462; Bingham v. Spruill, 97 Ill. App. 374–377; 1st Sutherland on Dam. 677.

It is also said that the court erred in allowing and taxing as a part of the costs and expenses of the suit, the sum of $82 stenographer's fees. It appears from the master's report that he had charged $150 for making report and $82 "stenographer's fees for taking testimony." The court allowed the "sum of $232 charged as master's fees and expenses herein." The master, in any event, was entitled to charge for the testimony taken by him at the statutory rate of fifteen cents per one hundred words. There is nothing to show what this amount was. That the master had the testimony taken by a stenographer in the master's presence, would not affect this right. No objection was taken by appellants before the master to his charge, nor was there any exception to the charge before the chancellor, so far as we can find from the record. The master's report showing, as it does, his charges, and no objection or exception thereto having been taken either before the master or the chancellor, it is too late to urge the claim for the first time in this court.

A cross-error by appellee is assigned as to the credit of $85 for the corn-crib and interest, but we are of opinion it should not prevail. Conceding that the corn-crib was built by appellee under an agreement with his landlord, Dreyer, that he might move it off when he ceased to be a tenant,

518    APPELLATE COURTS OF ILLINOIS.

VOL. 105.] Sup. Court Independent Order of Foresters v. Mutter.

and that it was of such a nature that it could have been moved without material injury to the realty, still we think the chancellor was correct in charging appellee with its value and interest.    From the evidence it appears that the crib was in the nature of a trade fixture, and unless removed by the tenant on or before the expiration of his lease, became a part of the realty.    2 Taylor on Landlord and Ten., Secs. 545, 551, 552, and note 3, p. 148, and cases cited; Sanitary Dist. v. Cook, 169 Ill. 184-190.

This crib was built in 1894, under a lease to appellee then existing.    It had expired when, on November 1, 1897, appellee took a lease from Walker, receiver, in which no mention was made of the crib and no reservation of any rights to remove buildings from the premises is contained in the lease.    Under the authorities cited, it became a part of the realty and passed to appellants under the foreclosure proceeding.    It was removed, as the master finds, without the consent of the receiver or appellants and against the receiver's objection, and its value, with interest, was properly charged to appellee.

What has been said we think fully covers other minor contentions in the case, and the decree of the Superior Court being, in our opinion, correct, is affirmed.