### Abe S. Davis, et al., v. Carsley Manufacturing Company.

#### Gen. No. 11,147.

1. TRADE FIXTURES—*when right to, is lost.* "A tenant waives his right to remove trade fixtures where, at the expiration of the lease under which they were erected,' he takes a new lease which neither reserves his right to the fixtures nor recognizes his right to remove them under the former lease, but contains covenants that he will keep the premises in good repair and deliver them up in as good condition as when received." (Portion of syllabus from Sanitary District v. Cook, 169 Ill. 184; quoted with approval in this case.)

2. TRADE FIXTURES—*who may restrain removal of.* One who has entered into a contract to purchase real property may restrain the occupant of such premises from the removal of trade fixtures which form a part of the freehold, and to which such occupant has no legal title.

3. WASTE—*power of equity to restrain.* "The remedy by injunction is fully established, and has not only virtually superseded the old common law action of waste, but has to a great extent taken the place of an action on the case for damages. An injunction will be granted in all cases where a legal action would lie to recover possession of the land wasted or to recover damages." (Quotation from Pomeroy's Equity Jurisprudence, approved in this case.)

WINDES, J., dissenting.

Proceeding to enjoin the removal of fixtures. Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the March term, 1903. Reversed and remanded. Opinion filed February 8, 1904.

**Statement by the Court.** In 1886 Carsley & Tomlinson were engaged in a manufacturing business in the city of Chicago in premises owned by the latter. In that year Tomlinson sold out his interest in such business to Carsley, and the latter took a lease of the building in his own name. When this lease expired in 1894, another lease was made

for the term of one year; and thus on annually, until the death of Tomlinson, after which his heirs made like leases to appellee, the last one being dated April 26, 1900. March 19, 1894, Tomlinson executed a deed of trust upon the premises to Sarah H. Haskell, whose name by an after marriage became Sarah H. Paret. The legal description of the property as described in this trust deed was followed by the words, " together with the buildings and improvements on said premises, and the steam engines, boilers and fixed machinery therein." Afterwards this trust deed was foreclosed in the Superior Court of Cook County, appellee being made a party thereto as tenant in possession. It was personally served and defaulted for want of answer. A sale was had under the decree entered in that suit, and Mrs. Paret became the purchaser. She then leased the premises to appellee, in which lease, after the description of the premises, are the words, " together with all buildings and improvements situate thereon." This lease contains no reservation of fixtures or of fixed machinery. There is a provision in it that it may be terminated on sixty days' notice. While this lease was in force, and on July 1, 1901, Mrs. Paret entered into a contract of sale with appellants, by which she agreed to sell them the premises for $35,000, on terms as follows: $1,000 in cash, $600 in ten days thereafter, and the balance in cash or in secured notes on October 1, 1901. Notice was at once given of the termination of the lease.

September 6, 1901, appellants filed a bill of complaint in the Circuit Court, alleging that by contract of purchase and sale of the premises they became and are the equitable owners of the steam engine, boilers and fixed machinery in the buildings situate thereon, and that such fixtures are attached to the buildings and are a part of the real estate; that they intend to carry out the said contract, and upon so doing, on October 1, 1901, will become both in law and equity the sole owners of said premises; that appellee now occupies said premises and claims to own said fixtures and is threatening to remove the same; that they are manufac-

turers of and dealers in iron bedsteads, and intend to use said premises in such business; that if appellee removes said fixtures complainants will be irreparably damaged; and that not having legal title they have no remedy at law. They pray for an injunction restraining appellee from removing said steam engine, boilers and fixed machinery from the premises. Copies of the contract of purchase and sale, of the master's deed to Sarah H. Paret, of the lease from her to appellee, and of the notice terminating the lease, were attached to the bill. The answer of appellee set up that it was a tenant in possession of the premises; that it was running a woodworking factory therein, and owned the machinery used in its business; and the same was not a part of the realty as fixtures; that it had notice of the termination of its lease, and intended to remove its property from the premises, but did not intend to remove the engine, boilers, shaft, driving belt, or elevator; that it reserved all rights of demurrer and denied that appellants had any standing in a court of equity, or were entitled to any relief under the bill. September 24, 1901, after hearing on bill, answer and affidavits, a temporary injunction was issued restraining appellee from interfering with the heating plant, gas and water pipes, the main shaft, and all other fixed machinery attached to the premises. It was at the same time agreed that if appellee removed the other machinery from the building, it would not be construed as a contempt of court, but appellants would accept a compensation on the final hearing of the cause. Under this agreement, appellee removed all the machinery not covered by the injunctional order, and vacated the premises in accordance to notice given. April 2, 1902, appellants filed a supplemental bill praying that they be compensated for the machinery so removed by appellee, setting up that since filing the original bill they had carried out their contract with Mrs. Paret, and had obtained from her a deed of the premises.

The next day Sarah H. Paret, by leave of court, appeared as co-complainant with appellants, and adopted the original

and supplemental bills; set up her contract to convey the premises to appellants, and that September 20, 1901, she conveyed the same to them; and as co-complainant, prays that appellants may be decreed to be the beneficiaries of all the property so conveyed, and their rights may be fixed and awarded by the court. Appellee, in answer to the original bill as amended, and to the supplemental bill and to the latter bill as amended, adopts its original answer; admits it removed all its machinery from the factory, not included in the restraining order, and that Mrs. Paret had conveyed the premises to appellants; and denies that she has any right to a decree or to the relief on her behalf prayed. A hearing was had, in which the chancellor considered the oral and written testimony offered by the respective parties, and the arguments of their counsel; and being fully advised in the premises, the chancellor ordered "that this cause be and the same hereby is dismissed out of this court at complainants' costs for want of equity without prejudice to any remedy the complainants may have at law, if any they may have."

From this final decree appellants perfected an appeal.

LEON ZOLOTKOFF and STEIN & PLATT, for appellants.

PIERSON & PEASE, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

If appellants had the right to file the original bill in this case, the decree of the Circuit Court is wrong, as appears from the decision in Sanitary District v. Cook, 169 Ill. 184. There the Pipers as tenants had placed upon the land certain improvements, consisting of a large barn, stable, dwelling, corncrib, etc. After the lease which was in force at the time these improvements were made had expired, they took a new lease, which did not reserve to the tenants such improvements, and did say that they had received such premises in good order and would yield them up in the same condition. Cook, the lessor, claimed to be the owner of these improvements; and, therefore, entitled to their

value as fixed by the verdict of the jury in a condemnation
suit brought by the Sanitary District. The Supreme Court
held his contention good. Its opinion on this point is sum-
marized in one of the headnotes : " A tenant waives his
right to remove trade fixtures where, at the expiration of
the lease under which they were erected, he takes a new
lease which neither 'reserves his right to the fixtures nor
recognizes his right to remove them under the former lease,
but contains covenants that he will keep the premises in
good repair and deliver them up in as good condition as
when received." The position of appellee is exactly that
in which the Pipers stood in the case cited; and, therefore,
we must hold that when the bill was filed in this cause ap-
pellee was not the owner of the trade fixtures in contro-
versy, and that they were the property of Sarah H. Paret
when she entered into the contract of purchase and sale with
appellants. The argument therefore recurs to the question :
at the time appellants filed their original bill, did they have
such a beneficial interest in the real estate or equitable own-
ership therein as would entitle them to relief as against the
wrongful removal of these fixtures ? The learned chancel-
lor who heard this cause decided this question in the nega-
tive; and therefore dismissed the bill for want of equity.

Counsel for appellee admit that when appellants paid the
$1,000 they had " a contract right in the premises," but do
not define the phrase in any way other than to deny its
title, legal or equitable. In Brewer v. Herbert, 30 Md. 301,
Herbert sold a " house and half a lot of ground " to Brewer
October 9, 1865, for $4,000, to be paid $2,000 April 1, 1866,
$1,000 April 1, 1867, and $1,000 April 1, 1868, possession
to be given Brewer April 1, 1866, and the deed to pass on
the payment of the whole consideration. Brewer, by re-
quest, paid $1,000 of the first payment on October 10, 1865.
The house was totally destroyed by fire February 5, 1866.
Herbert tendered the premises to Brewer April 2, 1866, but
the latter refused to accept them, and then brought an
action at law to recover the $1,000 he had paid on the con-
tract, upon the theory that Herbert was unable to perform

his part of the contract by reason of the destruction of the house. Then Herbert filed a bill to enjoin the suit at law, and for a specific performance of the contract. The trial court enjoined the proceedings at law, and decreed a specific execution of the contract. Upon appeal, the Supreme Court affirmed the decree of the court below in an opinion which shows great industry and learning. The gist of the decision is stated in these words: "From these and other authorities of equal weight, announcing the maxim that equity regards as done that which was agreed to be done, is deduced as the established doctrine in equity, that from the time the owner of an estate enters into a binding agreement for its sale, he holds the same in trust for the purchaser, and the latter becomes a trustee of the purchase money for the vendor, and being thus in equity the owner, the vendee must bear any loss which may happen, and is entitled to any benefit which may accrue to the estate in the interim between the agreement and the conveyance. 1 Sug. on Vend. 228, 388 to 391; 2 Powell on Cont. 69; Dart. on Vend. & Purchasers, 114 to 118; 2 Story's Eq., sec. 1212." See also Dunn v. Yakish, 61 Pac. R. 926.

In Lombard v. Chicago Sinai Congregation, 64 Ill. 477, appellant as purchaser filed a bill for the specific performance of a contract for the sale of certain parcels of land and a church edifice thereon and its contents for the sum of $62,000, of which $2,500 was paid down. The contract gave the vendors an option, in case of legal objections to their title, to declare the agreement cancelled or to make their title good. After a valid objection was made to the title they offered, and before they had exercised such option, the building and contents were destroyed by fire. Under these circumstances it was held that the contract lacked completeness, and therefore the loss fell upon the vendors. Judge McAllister, stating the opinion of the court, says: "The effect of such a contract is very different at law and in equity. At law, it confers upon the vendee a mere right of action. The estate remains the estate of the vendor and the money that of the vendee. In equity, it is other-

wise. Here, the estate, from the making of the contract is regarded as the real property of the vendee, attended by most, if not all, the incidents of ownership, and the purchase money as the property of the vendor. If we seek for the basis of this result—the principle underlying the doctrine—we find it in the principle of the familiar maxim that 'equity looks upon things agreed to be done as actually performed.' * * * The general proposition does not admit of controversy, upon the authorities, that from the making of an absolute contract of sale, the land is regarded, in equity, as the property of the vendee, who may dispose of it, or encumber it in like manner with land to which he has the legal title subject to the rights of the vendor under the contract." Citing authorities. "In equity, those having the beneficial interest in the subject-matter and relief sought, are the proper parties to sue, although they may not have the legal title or interest therein." Moore v. School Trustees, 19 Ill. 86. "Equity looks upon the things agreed to be done as actually performed; consequently, when a contract is made for the sale of an estate, equity considers the vendor as the trustee for the purchaser of the estate sold and the purchaser as the trustee of the purchase money for the vendor." Sugden on Vendors, p. 175. "Thus, if a man has entered into a valid contract for the purchase of land he is treated in equity as the equitable owner of the land and the vendor is treated as the owner of the money." Story on Equity Jurisprudence, sec. 790. See also sec. 1212. The same doctrine is laid down in Pomeroy Eq. Jur., sec. 368.

Appellee cites several cases from our Supreme Court defining "an equitable title" as the title of one who has so fully complied with his contract that he is entitled to a conveyance. These are cases of dower, ejectment, for support of parents, etc. In nearly every one of these cases the statement as to what constitutes an equitable title is dictum; and in those cases where it is not dictum, it must be read in the light of the facts before the court to prevent it from running counter to the uniform current of

the authorities. No one of these cases holds that the purchaser, as soon as a valid contract is executed entitling him to a conveyance when he fulfilled the executory covenants of the contract, does not have a beneficial interest in the real estate or lacks an equitable ownership therein.

It is not denied but that Mrs. Paret, as the landlord, could have gone into equity to restrain waste upon the part of her tenants, irrespective of the adequacy of any remedy she might have at law.

"The remedy by injunction is fully. established, and has not only virtually superseded the old common law action of waste, but has to a great extent taken the place of an action on the case for damages. An injunction will be granted in all cases where a legal action would lie to recover possession of the land wasted or to recover damages." Pomeroy's Eq. Jur., sec. 1348.

"Inasmuch as the removing of a building or improvement, permanently attached to the freehold, is *per se* an injury to the freehold, such removal will be regarded as waste." Windship v. Pitts, 3 Paige, 259. "Hence a court of chancery will restrain such removal, whether the mortgagor be solvent or insolvent." Williams v. Chicago Ex. Co., 188 Ill. 31.

Had Mrs. Paret attempted to remove these fixtures, appellants could have restrained her from so doing. Smith v. Price, 39 Ill. 28. Her tenant stands in no other position, nor is it vested with any rights which she has not.

The decree of the Circuit Court is reversed and the cause is remanded.

*Reversed and remanded.*

MR. JUSTICE WINDES, dissenting.