## F. T. Miller, Appellee, v. Webb Bennett, Appellant.

### Gen. No. 7,931.

1. SAVING QUESTIONS FOR REVIEW—*waiver of error in denying motion to dismiss appeal to circuit court by proceeding to trial on merits.* An assignment of error based upon the overruling by the circuit court of a motion to dismiss the appeal of plaintiff from a judgment entered against him by default in justice court is waived by proceeding to trial on the merits.

2. LANDLORD AND TENANT—*right to removable fixtures as between tenant and vendee of premises without notice.* Where a tenant of farm property stood by during the sale of the premises at auction under the provisions of the will of the landlord, without notifying the purchaser thereat of his claim to ownership of a corn elevator attached to the property which said tenant had installed without any agreement in respect thereof with either the testator or the trustees under the will, and said tenant thereafter moved from the premises without attempting to remove the elevator, under Cahill's St. ch. 80, ¶ 35, he could not recover possession of the elevator in an action of replevin against the purchaser at such sale.

3. LANDLORD AND TENANT—*estoppel of vendee of premises to enforce right to unremoved fixtures claimed by former tenant under assignment of bid therefor at sale of tenant's personalty.* The vendee of farm property was not estopped to enforce his right under Cahill's St. ch. 80, ¶ 35, to a fixture installed by a former tenant but left upon the premises when the tenant moved therefrom, by reason of the fact that prior to such removal the tenant sold such fixture at auction and thereafter purchased the bid from the successful bidder.

Appeal by defendant from the Circuit Court of De Witt county; the Hon. GEORGE A. SENTEL, Judge, presiding. Heard in this court at the October term, 1925. Reversed. Opinion filed December 31, 1925.

L. O. WILLIAMS, for appellant.

RAYBURN H. WILSON, for appellee.

MR. JUSTICE CROW delivered the opinion of the court.

Action in replevin was begun by plaintiff against defendant before a justice of the peace to recover pos-

session of an elevator used on a farm to hoist or convey corn into a corncrib. It is referred to in the record as a "corn dump." At the time the case was set for trial before the justice, plaintiff's attorney told the justice he would not appear and that he could default plaintiff and he would appeal. The justice rendered a judgment that the property "be and is hereby awarded to the defendant and judgment against plaintiff for costs." Plaintiff perfected an appeal to the circuit court. Defendant there filed a motion to dismiss the appeal and strike the case from the docket on the ground the plaintiff had confessed judgment, and that plaintiff by reason of default had dismissed his case, from which there was no appeal. The court overruled it. Error is assigned on that ruling, authorities are cited and argument made in support of the assignment. We dispose of it without further notice except to say that by proceeding to trial on the merits it was waived.

This corn dump or elevator was firmly attached to the land and to a large double corncrib that was attached to the land. It was securely fastened to a concrete foundation about thirty inches square and about eighteen inches in the ground on the inside of the crib. Four bolts were embedded in this concrete to which the base of the elevator was fastened. The hopper of the elevator was bolted into the studding of the crib. There was a large timber spiked to the rafters in the top of the building, to which other timbers were nailed with spike nails, and the upper part of the elevator was fastened to these timbers by bolts. The "drop" of the elevator which causes the wagons to tilt to empty the grain into the elevator was bolted to extra timbers built into the lower part of the crib. They were nailed to the crib, and the lower part of the elevator was fastened to them by sixteen bolts. The extra pieces were built into the crib for the purpose of attaching the corn elevator in question. They were firmly nailed with spikes to the building. As a part

of the elevator, a large iron shaft was fastened by bolts and bearings to the overhead sills of the building. This shaft was six or eight feet long and firmly attached to the building by bolts and nails. The machinery to run the elevator is operated through this shaft by gears and chains. It was attached to the land in the same manner, on the 5th day of September, 1923, when the defendant bought the land, and there was no change made afterward in the manner of its attachment. It was still attached in the same manner at the time the suit was brought.

Plaintiff's wife was a daughter and heir of Acquilla Bennett, the testator under the provisions of whose will the farm was sold. The plaintiff was present at the auction sale when the defendant bought the land, and said nothing about owning it. He stood by and permitted the defendant to purchase without serving notice of any claim to anything attached to the land. He admitted in his testimony that he told defendant nothing about the machinery until after he had purchased the land. Defendant testifies that at the time he purchased, he had no knowledge that the plaintiff claimed it, and this testimony is not contradicted. It is also a fact, admitted by plaintiff, that he placed the machinery in controversy on the premises without consulting or having any agreement with regard to its placing or removal, either with the testator or the trustees under his will.

Plaintiff had an auction sale of his personal property at the farm in December, 1921. He testified he put this machinery up for sale and that $50 or $60 was bid on it and "I made the assertion that if it did not bring $100 I would give the man $5 for his bid. The auctioneer received bids on it. It was struck off to Oliver Roberts. I done as I made the statement." He further testified he paid Roberts the $5. He had been a tenant 15 years, moving away from the premises January 11, 1922. He testified the elevator was worth

from $150 to $175. It was not moved from the premises while he was in possession.

While the action begun was replevin, the property sought to be taken not having been seized, plaintiff proceeded as in trover and conversion. That the property in controversy was attached to the real estate is not open to question. Is it, as contended by appellee, a "removable fixture?" If not, he can recover in no event. If it is, the rights of the parties are fixed by law. The rule as to the time for the removal of "removable fixtures" by tenants being uncertain under the decisions of the courts in this State, the legislature in 1905 enacted an amendment to the Landlord and Tenant Act to remove the uncertainty. It is section 35 of chapter 80, Smith-Hurd's Statutes:

"Subject to the right of the landlord to distrain for rent, a tenant shall have the right to remove from the demised premises all removable fixtures erected thereon by him during the term of his lease, or of any renewal thereof, or of any successive leasing of the premises while he remains in possession in his character as tenant." [Cahill's St. ch. 80, ¶ 35.]

Attention to the language of this section in the light of decisions relating to the rights of tenants to remove fixtures discloses that it created no new right. It operates as a limitation on a right existing previously. It relates only to removable fixtures. Of course removable fixtures might be removed without any enabling act. There was never any controversy as to that right. The only scism was as to when it might be exercised. To quiet that scism, it is now declared, in unmistakable terms, such fixtures must be removed "during the term" of the lease, *or* of any renewal thereof, *or* of any successive leasing, *while* he remains in possession in his character as tenant. Before its enactment, a renewal lease without mentioning the right to removal of fixtures previously placed or erected would be defeated. *Sanitary District v. Cook,*

169 Ill. 184. But that rule is changed, and the right to removal, limited as to time, is plain. Neither explanation, repetition nor emphasis of the language quoted can make it plainer.

The corollary from this plain language is, if not removed within the time allowed it cannot be removed by the tenant, and passes to the landlord and to his successors in title and possession, as part of the land to which it is affixed. The strictness with which this statutory rule operates is illustrated by *Fellows v. Johnson,* 183 Ill. App. 42, the only case coming to our attention applying this section now under consideration. The tenant there surrendered possession in compliance with the contract of leasing under which he was in possession. He had erected on the premises at his own expense a frame addition to the barn, a shed, and some other structures that were accessions to the real estate, which were within the terms of the provisions of the lease giving him the right to remove. Having attempted to remove these structures, he was prevented from so doing by the vendee, and brought suit in replevin with a count in trover. On trial without a jury, the court rendered judgment for defendant. By a clause of the lease the landlord reserved the right to terminate it on the first day of any March during the term if he sold the premises, giving six months' notice. By another clause the tenant had the right to remove any improvements put on the premises for his own convenience and at his own expense, if called on to vacate the premises before the termination of the lease. The court held that, applying the statute, not having removed the removable fixtures before the termination of the lease, he had no right to them and that he could not recover their value from the landlord's vendee. In that case, as applicable to the facts like those in the case at bar, the court said (page 48):

"Appellant's (plaintiff's) right to occupy or enter upon the premises expired with the termination of his

lease and his surrender of possession. No Illinois case is cited, and we know of none, that would permit him to enter thereafter to remove improvements he had placed thereon. To hold that he could do so, would be to extend by implication the term of his lease as fixed by his contract, which does not seem to us consistent with the policy of our law or with the proper construction of written contracts.''

We are of the opinion that plaintiff in this case is in no better position than was plaintiff in that. He did not remove the corn elevator while he remained in possession as tenant nor was he prevented from so doing while in such possession. He claims to have bought the bid of a bidder for this elevator at his own sale of personal property, paying $5 for a $150 or $175 corn elevator. He attempts to create an estoppel by conduct of defendant to claim this property at the auction at which he claims to have purchased. It would indeed be a novel application of the principle of estoppel for a court to hold that plaintiff, with all the knowledge he possessed of the transaction by which defendant came into possession of the corn elevator, should have title by estoppel. He was present at the auction at which the land was sold by the trustees under the will of Acquilla Bennett. He told no one at that time he had any claim to the elevator, although he knew, at least knowledge is imputed to him, that it would pass by the sale except under peculiar circumstances within his knowledge, if such existed. His wife had a one-eighth interest in the land. He stood within eight feet of the trustee selling the real estate, said nothing about any claim, and now contends a cotenant purchasing the land must surrender a substantial attachment to the real estate, for which his wife presumably received her portion of the purchase price.

Many errors are assigned on the record, many of which are fatal to the verdict. But having considered the record in its entirety we are satisfied the verdict

returned and the judgment rendered under the uncontroverted facts are contrary to the law applicable to the case. There was no right of recovery. The court should have allowed defendant's motion to direct a verdict for him. For the error in denying that motion, the judgment of the circuit court is reversed with judgment against appellee here for costs.

*Reversed.*